CHARLES JEFFREY HILL, PLAINTIFF
v.
DAWN SANDERSON HILL, DEFENDANT

No. COA12-1155

Filed 17 September 2013

1. **Divorce—equitable distribution—mortgage payment—no credit—no abuse of discretion**

    The trial court did not abuse its discretion in an equitable distribution case by not awarding any credit to plaintiff for his payment of mortgage debt from the date of separation to the date of distribution.

2. **Divorce—equitable distribution—classification of asset—distribution of asset**

    The trial court erred in an equitable distribution case by failing to determine whether a company was a marital asset and to distribute money from that corporation based on this determination.

**3. Divorce—equitable distribution—post-separation payments —divisible property**

The trial court did not err in an equitable distribution case by failing to find that plaintiff's post-separation payments on the marital home were divisible property. The payments were ordered pursuant to a post-separation support order.

**4. Divorce—equitable distribution—classification of debt—distribution of debt**

The trial court erred in an equitable distribution case by failing to find an equity line of credit debt was a marital debt, a separate debt, or partially marital and partially separate and to distribute it accordingly. The issue was remanded for further proceedings.

**5. Divorce—equitable distribution—credit card debt— distribution**

The trial court erred in an equitable distribution case by failing to properly distribute certain credit card debt. The issue was remanded further proceedings.

**6. Divorce—equitable distribution—classification of vehicles —distribution**

The trial court erred in an equitable distribution case by distributing several vehicles and the parties' bank accounts, without classifying them as marital or separate property. The issue was remanded for further proceedings.

**7. Divorce—equitable distribution—unequal distribution— determination of parties' income**

The trial court erred in an equitable distribution case by making an unequal distribution to defendant. The determination of the parties' incomes was not made at the time of equitable distribution. The issue was remanded for further proceedings.

**8. Divorce—equitable distribution—valuation of property**

The trial court erred in an equitable distribution case in the valuation of certain undeveloped lots owned by the parties and in the valuation of the parties' primary residence. The listing price for each of the undeveloped lots was not an indication of their fair market value. Further, the trial court's consideration of expenses of sale of the primary residence went beyond what was permitted in determining its value. The issue was remanded for further proceedings.

**HILL v. HILL**

[229 N.C. App. 511 (2013)]

**9.  Divorce—equitable distribution—delayed issuance of judgment—no prejudice**

Plaintiff in an equitable distribution case failed to show actual prejudice as a result of a six-month delay from the conclusion of the trial court's hearings to the issuance of the trial court's equitable distribution judgment.

Appeal by plaintiff from judgment entered 5 March 2012 by Judge Julie M. Kepple in Buncombe County District Court. Heard in the Court of Appeals 14 March 2013.

*Mary Elizabeth Arrowood for plaintiff-appellant.*

*No appellee brief filed.*

STEELMAN, Judge.

The trial court erred in failing to classify property, in the valuation of property, and in considering a distributional factor that was based on an erroneous finding. Portions of the trial court's order are vacated, and this matter is remanded to the trial court.

## I.  Factual and Procedural History

Charles Jeffrey Hill (plaintiff) and Dawn S. Hill (defendant) were married on 3 August 1996. Two children were born of the marriage. The parties separated on 6 July 2009. On 18 August 2009 plaintiff filed a complaint seeking custody of the children and equitable distribution of marital property.

On 5 March 2012, the trial court filed its judgment on equitable distribution. The trial court recited the parties' stipulations concerning five tracts of real estate that were marital property, and one tract that was the separate property of plaintiff. The stipulations did not encompass the values of the real estate, but did list the liens on each property, and the amounts of each lien. The parties also stipulated as to the locations and amounts of their retirement accounts. There were further stipulations as to items of personal property, the values of that property, and to which party the items should be distributed. The trial court cited a number of distributional factors, and determined that an unequal distribution of marital property to defendant was equitable. Two tracts of real estate were distributed to defendant. Four tracts of real estate were distributed to plaintiff. The bulk of the assets in retirement accounts were

distributed to defendant. Tangible personal property was distributed in accordance with the stipulations of the parties.

Plaintiff appeals.

## II.  Observations Concerning This Appeal

This case appears to embody all of the flaws that could possibly create an abominable appeal of an equitable distribution judgment. The defendant filed no brief. The hearings before the district court took place on 27 June 2011, 28 June 2011, 1 July 2011, and 1 September 2011. As to the 1 July 2011 hearing, there is no transcript for that date, only a cursory narrative of plaintiff's testimony, which is written from plaintiff's point of view. Defendant never objected to this narrative.

The transcripts of the remaining hearings were filed in paper and not electronically, as mandated by the provisions of Rule 7(b)(2) of the North Carolina Rules of Appellate Procedure. The transcripts reveal that the parties submitted in excess of 70 exhibits to the trial court, none of which were submitted to this Court pursuant to Rule 9(d) of the Rules of Appellate Procedure. However, plaintiff freely makes references to the exhibits in his brief, without submitting them in an appendix to his brief or including them in a supplement to the record.

The order of the trial court combines evidentiary findings of fact, ultimate findings of fact, and conclusions of law, without any attempt to make them separate portions of the order. The brief of appellant is replete with inaccurate references to the record and transcript. In many instances there are no references to where the factual assertions are to be found in the record or transcript, in violation of Rule 28(e) of the Rules of Appellate Procedure.

While these rules violations are substantial, and come very close to meriting dismissal of the appeal, we conclude that this appeal should not be dismissed. *See Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., Inc.*, 362 N.C. 191, 200, 657 S.E.2d 361, 366 (2008) (holding that "only in the most egregious instances of nonjurisdictional default will dismissal of the appeal be appropriate."). However, the manner in which this appeal has been presented fundamentally hampers our review. The Court of Appeals sits as a reviewer of the actions of the trial court. In that role, we must be impartial to all parties. It is not our role to advocate for a party that has failed to file a brief, nor is it our role to supplement and expand upon poorly made arguments of a party filing a brief. "It is not the role of the appellate courts ... to create an appeal for an appellant. ... [T]he Rules of Appellate Procedure must be consistently

**HILL v. HILL**

[229 N.C. App. 511 (2013)]

applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." *Abbott v. N.C. Bd. of Nursing*, 177 N.C. App. 45, 48, 627 S.E.2d 482, 484-85 (2006) (citations omitted). We address only those issues which are clearly and understandably presented to us. On issues that require remand to the trial court, we will attempt to be clear and concise as to the perceived defect, and what the trial court needs to do upon remand to correct these defects.

We acknowledge that our trial courts are overworked and under-staffed. However, it is ultimately the responsibility of the trial judge to insure that any judgment or order is properly drafted, and disposes of all issues presented to the court before the judge affixes his or her signature to the judgment or order. This is particularly true in a complex case, such as one involving the equitable distribution of marital property.

### III.  Standard of Review

> Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with the statute, will establish an abuse of discretion.

*Wiencek-Adams v. Adams*, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992) (citations omitted).

Although this is a "generous standard of review," *Robinson v. Robinson*, 210 N.C. App. 319, 322, 707 S.E.2d 785, 789 (2011), the trial court must still comply with the requirements of N.C. Gen. Stat. § 50-20(c), which sets out a three step analysis:

> First, the court must identify and classify all property as marital or separate based upon the evidence presented regarding the nature of the asset. Second, the court must determine the net value of the marital property as of the date of the parties' separation, with net value being market value, if any, less the amount of any encumbrances. Third, the court must distribute the marital property in an equitable manner.

*Smith v. Smith*, 111 N.C. App. 460, 470, 433 S.E.2d 196, 202-03 (1993) (citations omitted), *rev'd in part on other grounds*, 336 N.C. 575, 444 S.E.2d 420 (1994).

> The first step of the equitable distribution process requires
> the trial court to classify *all* of the marital and divisible
> property—collectively termed distributable property—in
> order that a reviewing court may reasonably determine
> whether the distribution ordered is equitable. In fact, to
> enter a proper equitable distribution judgment, the trial
> court must specifically and particularly *classify and value
> all assets and debts maintained by the parties at the date
> of separation.* In determining the value of the property,
> the trial court must consider the property's market value,
> if any, less the amount of any encumbrance serving to
> offset or reduce the market value. Furthermore, in doing
> all these things the court must be specific and detailed
> enough to enable a reviewing court to determine what was
> done and its correctness.

*Robinson,* 210 N.C. App. at 323, 707 S.E.2d at 789 (citations and quotations omitted) (emphasis in original).

## IV.  Failure to Classify Property

In his first, second and sixth arguments, plaintiff contends that the trial court erred by not making findings of fact regarding divisible property, by not distributing divisible property, and by not classifying assets as marital or separate property. We agree as to some of plaintiff's arguments, but disagree as to others.

### A.  Reduction of Debt by Plaintiff Following Separation

[1]  First, plaintiff contends that the trial court made no findings with regard to the appreciation in the value of the marital home based on plaintiff's payment of mortgage debt from the date of separation to the date of distribution, and that the trial court did not distribute this appreciation as divisible property, as required by N.C. Gen. Stat. § 50-20(b)(4)(d). We disagree.

The trial court made several findings as to the value of the marital home and the mortgage thereupon, and determined that

> the home at this point and in the current market has no
> equity and therefore no monies would be realized at the
> point of sale. The reduction of principal is primarily due to
> the payments made by Defendant and the loan modifica-
> tions. Plaintiff's payments were made pursuant to a court
> order in lieu of postseparation support and were in fact

an award of support to Defendant. *Sloan v[.] Sloan*[,] 151 N[.]C[.] App[.] 399, [407,] 566 S[.]E[.] 2d 97, [103] (2002).

The trial court made several additional findings about plaintiff's payments of the two mortgages on the marital home, and noted that "[p]laintiff did not provide sufficient evidence of which payments he made and in what amount, and the court is unable to determine what if any credit should be given for payments made on this debt." The trial court noted that plaintiff made the ordered payments "sporadically and then ceased making payments[,]" and held that it would "determine later what amounts were paid and what amounts may still be due[.]" We hold that this finding was supported by evidence in the record. The trial court's decision not to award any credit to plaintiff was not an abuse of the trial court's discretion.[1]

### B. The Corporation

[2] Second, plaintiff contends that there were post-separation distributions made from a corporation, "Speaking of, Inc.," that the trial court failed to classify and distribute as marital property. We agree.

With respect to this issue, we are hampered by the fact that the numerous exhibits pertaining to the corporation are not before us. These include the articles of incorporation, amendments to the articles, stock certificates, and corporate tax returns, admitted as plaintiff's exhibits 25 through 29; and the expert valuation of the corporation by Foster Shriner, admitted as defendant's exhibit 16.

In August of 2001, the parties incorporated "Speaking of, Inc." which was the corporate vehicle by which defendant performed services as a speech pathologist. At trial, there was testimony that the articles of incorporation and the tax returns through 2008 showed plaintiff and defendant to be equal owners of the business. The corporation operated under Subchapter S (Sections 1361 through 1379 of the Internal Revenue Code).

The trial court failed to determine whether the corporation was marital property, but then distributed the corporation to defendant. Based upon Mr. Shriner's testimony, the court found that the fair market value of the corporation was $0.00, but failed to state whether that value was as of the date of the parties' separation. Plaintiff does not contest the value or distribution of the corporation on appeal.

---

1. The trial court's valuation of the marital residence is discussed in part VI B of this opinion.

Rather, plaintiff complains that the trial court erred by not holding that two distributions from the corporation in 2009 and 2010, totaling about $35,000, were marital property. Income for the corporation was created by the work of defendant as a speech pathologist. This income was distributed by the corporation in two ways. First, defendant was paid a salary. Second, there were non-salary distributions to the shareholders. Defendant's expert testified that frequently Subchapter S corporations pay out low salaries to shareholders, followed by a large shareholder distribution that is not subject to withholding taxes for Social Security and Medicare.

As to the stock ownership of the corporation, the testimony was that the articles of incorporation indicated that there was equal ownership of the stock. Defendant contended that no stock was ever issued. There was testimony that defendant filed a document on 21 May 2009 stating that plaintiff had transferred his entire interest in the corporation to defendant. Plaintiff contended that the stock was issued, but the certificates could not be found following the separation of the parties. Subsequently, plaintiff, as treasurer of the corporation, issued "replacement shares." The trial court held that "on the date of separation no stock had been issued." Where there is any competent evidence to support such a finding, that finding is binding upon appeal. *See Brackney v. Brackney*, 199 N.C. App. 375, 388-89, 682 S.E.2d 401, 409 (2009) (quoting *Nix v. Nix*, 80 N.C. App. 110, 112, 341 S.E.2d 116, 118 (1986)).

However, this is not dispositive of whether the corporation was a marital asset. Title is not controlling in determining whether an asset is marital property, and shares of stock represent "title" to the property. One of the purposes of the Equitable Distribution Act was "to alleviate the unfairness of the common law [title theory] rule" and to base property distribution upon "the idea that marriage is a partnership enterprise to which both spouses make vital contributions. . ." *Friend-Novorska v. Novorska*, 131 N.C. App. 508, 510, 507 S.E.2d 900, 902 (1998); *see also White v. White*, 312 N.C. 770, 774-75, 324 S.E.2d 829, 831-32 (1985). If the corporation was created during the marriage, and it was owned and operated by the parties, it is a marital asset regardless of the stock ownership. *See* N.C. Gen. Stat. § 50-20(b)(1).

As to the $35,000 in post-separation, non-salary distributions made to plaintiff, the trial court found:

> Although certain distributions are shown on the corporation's tax returns, these are not dividends but merely reflect the corporation's method of paying a salary to the

officer of the corporation. Defendant received a small amount of income as wages, and the balance as a distribution to her without tax withholding.

In the event that the corporation was a marital asset, we hold that this finding was in error. The trial court recharacterized a shareholder distribution as salary to defendant. The parties set up the corporation as a Subchapter S corporation, and then used the shareholder distributions to avoid payment of federal withholding taxes for Social Security and Medicare. The parties are bound by their established methods of operating the corporation. The retained earnings of a Subchapter S corporation, upon distribution to shareholders, are marital property. *See Allen v. Allen*, 168 N.C. App. 368, 375, 607 S.E.2d 331, 336 (2005). The $35,000 in distributions would be marital property, if the corporation was marital property. However, the trial court can consider how this income was generated as a distributional factor under N.C. Gen. Stat. §§ 50-20(c)(1) and (12).

The portion of the trial court's equitable distribution judgment pertaining to the corporation is vacated. Upon remand, the trial court shall determine whether the corporation was marital property, and if so, distribute the corporation and the $35,000 in accordance with the holdings of this opinion.

### C. Post-Separation Support Payments

[3] Third, plaintiff contends that the trial court erred in failing to find that his post-separation payments on the marital home were divisible property. We disagree.

Pursuant to a prior post-separation support order, plaintiff was to pay $505.00 per month towards the first mortgage on the marital residence. The trial court found that these payments were made pursuant to a post-separation support order "in lieu of postseparation support[,]" and were an award of support to defendant. The trial court further found that it would "determine later what amounts were paid and what amounts may still be due under the order at the time of the trial of the alimony claim and the court may take into consideration any payments paid by Plaintiff after the separation." Plaintiff contends that this was error.

We have previously held that monies paid pursuant to an alimony obligation are not included in an equitable distribution of the parties' debts. *See Robinson*, 210 N.C. App. at 335, 707 S.E.2d at 796; *see also* N.C. Gen. Stat. § 50-20(f). In the instant case, the payments were ordered pursuant to a post-separation support order, and it further appears that the

trial court intended to address these payments at a later hearing. Because these were support payments, they were not divisible property and the trial court did not err in failing to find them to be divisible property.

### D. Equity Line Debt

[4] Fourth, plaintiff contends that the trial court erred in failing to find that his payments on an equity line of credit debt were divisible property. We agree.

The parties had stipulated that there was a Wachovia (now Wells Fargo) equity line debt, secured by plaintiff's separate real property, of $42,505.10 on the date of separation. The parties did not stipulate to the classification of this debt. The trial court found that:

> Prior to the marriage, Plaintiff used the credit line to purchase a vehicle for $25,000. The parties made interest payments on the equity line throughout the marriage. The debt was never entirely paid off and on date of separation the balance was $42,505.10[.]

In another portion of the order, the trial court found that:

> The Wachovia Equity Line was linked as an overdraft protection account to the Speaking of Inc. account. Plaintiff managed all of the bank accounts and transferred funds between accounts as needed. The corporate funds were used for marital purposes from time to time, and the equity line was used for corporate purposes from time to time. There was no evidence provided showing an accounting for these funds. Plaintiff maintains that the corporation owes the parties $7400 but that was not substantiated.

The trial court's findings seem to indicate that to some extent the equity line debt was incurred as plaintiff's separate debt (for the vehicle purchase prior to the marriage), and to some extent for marital purposes. Indeed, as the value of the debt at separation, $42,505.10, exceeded the original pre-marital debt of $25,000.00, it is clear that some portion of the increase in the debt occurred during the marriage. While we note that N.C. Gen. Stat. § 50-20(b)(2) provides that the "increase in the value of separate property . . . shall be considered separate property[,]" we have previously held that:

> Increases in value to separate property attributable to the financial, managerial, and other contributions of the marital estate are "acquired" by the marital estate. When

the increase in value to separate property is attributable to both the marital and separate estates, each estate is entitled to an interest in the "acquired" increase consistent with its contribution. Accordingly, the marital estate shares in the increase in value of separate property "it has proportionately 'acquired' in its own right" through financial, managerial, and other contributions, but does not share in the increase in value of separate property acquired through passive appreciation, such as inflation.

*Ciobanu v. Ciobanu*, 104 N.C. App. 461, 465, 409 S.E.2d 749, 751-52 (1991) (citations omitted). On remand, the trial court should clarify whether and in what proportion this debt is separate or marital.

Plaintiff contends that the payments on this debt should have been classified as divisible property pursuant to N.C. Gen. Stat. § 50-20(b)(4) (d). The trial court found that the amount of this debt at separation was $42,505.10, based upon the parties' stipulation. Plaintiff asserts in his brief that he made post-separation payments of $3,883.00 towards the equity line debt. However, there is no citation to the record or transcript supporting this assertion. Further, there is no finding in the trial court's order as to the value of the equity line debt as of the date of distribution.

In *Warren v. Warren*, 175 N.C. App. 509, 623 S.E.2d 800 (2006), we held:

> [N.C. Gen. Stat. § 50-20(b)(4)] authorizes the court to classify postseparation payments of marital debt as divisible property. Whether these payments reduce the principal of the debt, the finance charges related to the debt, or interest related to the debt, the court should consider the postseparation payments as divisible property. If the postseparation reduction of the marital debt increases the net value of the marital property, the court may classify the increase as divisible property.

*Warren* at 517, 623 S.E.2d at 805 (citations omitted).

We vacate the portion of the trial court's order pertaining to the equity line debt. Upon remand, the trial court shall determine whether this was a marital debt, a separate debt, or partially marital and partially separate. If it finds that any portion of the debt is marital, it shall determine the amount of the debt at the date of distribution, and shall distribute the increase or decrease as divisible property. Finally, it shall determine the amount of post-separation payments on the debt by

the parties, and treat those payments as divisible property in accordance with *Warren.*

### E. Credit Card Debt

**[5]** Next, plaintiff contends that the trial court erred in failing to properly distribute certain credit card debt. We agree.

The evidence presented at trial was that just prior to separation, defendant's car needed a new transmission. Plaintiff paid this debt with a credit card. The trial court made the following finding of fact:

> Plaintiff made a car repair payment on his credit card in the amount of $3,287.19. This debt was incurred prior to the date of separation and was for a marital purpose.

We hold that this finding is tantamount to finding that this was a marital debt.

However, in the distributional portion of the order, the trial court held that "[p]laintiff's credit card debts totaling $3,287.19 is not distributed to the Plaintiff." The judgment did not distribute the debt to defendant. We are at a loss to understand this holding which appears to contradict the trial court's finding of fact. We vacate the distributional portion of the equitable distribution judgment pertaining to the credit card debt, and remand this issue to the trial court. The trial court shall distribute this debt to one of the parties.

### F. Other Assets

**[6]** Finally, plaintiff contends that the trial court erred in distributing several vehicles and the parties' bank accounts, without classifying them as marital or separate property. We agree.

The trial court made findings concerning a Nissan Pathfinder, a Ford Expedition, a Harley Davidson motorcycle, and a Haulmark trailer, as well as the parties' bank accounts. The trial court distributed the Nissan Pathfinder to defendant, and distributed the Ford Expedition, the Harley Davidson, and the trailer to plaintiff. The trial court also distributed the bank accounts to plaintiff. The trial court, in its distribution, did not classify any of these as marital or separate assets.

N.C. Gen. Stat. § 50-20, which governs the distribution of marital and divisible property by the court, is quite clear, stating that:

> Upon application of a party, the court *shall determine what is the marital property and divisible property and*

shall provide for an equitable distribution of the marital property and divisible property between the parties in accordance with the provisions of this section.

N.C. Gen. Stat. § 50-20(a) (2011) (emphasis added). The trial court failed to comply with N.C. Gen. Stat. § 50-20 when it failed to "determine what is the marital property and divisible property" before distributing assets and debts. "A distribution order failing to list all the marital property is fatally defective, and, further, marital property may not be identified by implication." *Stone v. Stone*, 181 N.C. App. 688, 693, 640 S.E.2d 826, 829 (2007) (quoting *Cornelius v. Cornelius*, 87 N.C. App. 269, 271, 360 S.E.2d 703, 704 (1987)). Accordingly, the equitable distribution order as to this property is vacated, and this matter remanded to the trial court, with instructions to classify each asset as marital, divisible, or separate before distribution.

Plaintiff also contends that, on the date of separation, defendant had bank accounts in the amount of $150.00 and $765.81. Plaintiff contends that the trial court erred in failing to classify and distribute these assets. Plaintiff cites to no evidence in the record which would support the existence of these assets, nor do we find any among the admittedly limited transcripts and trial court's order. Accordingly, we hold that the trial court did not err in failing to classify and distribute these alleged assets.

## V. Unequal Distribution Factors

[7] In his third argument, plaintiff contends that the trial court erred in making an unequal distribution to defendant. We agree.

N.C. Gen. Stat. § 50-20(c) mandates that equitable distribution be made equally between the spouses, unless the court examines an explicit list of factors and determines equal distribution to be inequitable. N.C. Gen. Stat. § 50-20(c) (2011). The trial court is required to make findings of fact as to any factors upon which evidence has been presented, but the trial court determines what evidence is credible and the weight to be given to each factor. *Plummer v. Plummer*, 198 N.C. App. 538, 545, 680 S.E.2d 746, 751 (2009); *Brackney v. Brackney*, 199 N.C. App. 375, 391, 682 S.E.2d 401, 411 (2009); *Mugno v. Mugno*, 205 N.C. App. 273, 278, 695 S.E.2d 495, 499 (2010).

The trial court found the following statutory factors in favor of unequal distribution: (1) that plaintiff earned almost twice defendant's income; (2) that both parties were in good health and of similar age; (3) that the parties had been married for 13 years prior to separation; (4) the liabilities of the parties, including their lack of equity in the home,

the high payments required on the debt, and the purpose for which debt was acquired; (5) plaintiff's separate property; (6) both parties' efforts to maintain and preserve the marital estate; (7) pre-existing debts of both parties; (8) the existence or lack thereof of pension, retirement, or similar compensation packages; (9) the non-liquid character of several pieces of real property which have proven difficult to market; (10) defendant's efforts to refinance the residence; (11) plaintiff's support of defendant's education; and (12) potential tax consequences of the distribution of retirement accounts.

First, plaintiff contends that the trial court's finding of the parties' relative incomes was not supported by the evidence. The trial court found that plaintiff earned about twice the income of defendant. Consideration of the relative incomes of the parties is entirely appropriate and indeed required, if the parties have presented evidence on this issue and requested an unequal distribution based upon this factor. *See Fox v. Fox*, 114 N.C. App. 125, 135, 441 S.E.2d 613, 619 (1994).

The trial court based its finding upon a prior order for post-separation support, in which defendant's income had been found to be $1,782.00 per month. According to N.C. Gen. Stat. § 50-20(c)(1), the determination of relative incomes must be made at the time of equitable distribution. To the extent that this finding was based solely upon the prior post-separation support order, and not evidence of the parties' incomes at the time of distribution, the amount of defendant's income found by the trial court was not supported by the evidence. This was error.

Second, plaintiff contends that the trial court's finding as to the liabilities of the parties was in error. The trial court found that, at the date of separation, the parties had liabilities of $366,513.30. We hold that the trial court correctly considered the liabilities of the parties pursuant to N.C. Gen. Stat. § 50-20(c)(1). This was not error. However, on remand, the trial court may be required to revise its findings as to this factor consistent with the other directives contained in this opinion.

Third, plaintiff takes issue with several other findings made by the trial court, with regard to "the amount of equity in the home, the high monthly payments and the reason the debt was incurred[,]" arguing that these were not proper factors to be considered. Even assuming *arguendo* that these factors are not factors explicitly enumerated in the statute, the statute does allow for the court to consider "[a]ny other factor which the court finds to be just and proper[,]" N.C. Gen. Stat. § 50-20(c)(12), so long as that factor relates to the economics of the

marriage. *See Smith v. Smith*, 314 N.C. 80, 81, 331 S.E.2d 682, 683 (1985) (holding that misconduct that does not affect the value of marital assets is not a "just an proper factor" under N.C. Gen. Stat. § 50-20(c)(12)). The trial court was entitled to consider these additional factors which related to the financial circumstances of the marriage, and did not abuse its discretion in doing so. This was not error.

Fourth, plaintiff contends that the trial court erred by failing to consider distributional arguments made at trial by plaintiff. Specifically, plaintiff contends that he presented evidence of: plaintiff's contributions to defendant's career; plaintiff's contributions of separate funds to the marriage and defendant's lack thereof; defendant's exclusive use of the marital home from the date of separation; the non-liquid character of the undeveloped real estate parcels as investment property; plaintiff's post-separation payment of debts; the difficulty in evaluating the value of defendant's corporation; plaintiff's reduction in credit rating; the use of equity line debt to finance the corporation; alleged dividends from the corporation; defendant's use of plaintiff's savings funds; and defendant's separately-filed income tax return.

The trial court is required to consider each of the factors enumerated in N.C. Gen. Stat. § 50-20(c), including "[a]ny other factor which the court finds to be just and proper[,]" to the extent that evidence is presented as to each factor. N.C. Gen. Stat. § 50-20(c)(12). However, this statute does not require the trial court to consider additional factors beyond those enumerated in the statute. Consideration of factors beyond those enumerated, as previously stated, is within the trial court's discretion. The trial court considered the arguments and proposed factors of both sides, and, in its discretion, did not find all of the facts argued by plaintiff. The trial court did consider each of the relevant statutory factors under N.C. Gen. Stat. § 50-20(c), and in doing so, did not abuse its discretion. This was not error.

We hold that the trial court committed error with regard to its determination of defendant's income at the date of distribution. As the trial court must weigh all of the distributional factors together and determine the weight to be given to each factor, we vacate the portions of the trial court's order regarding the unequal distribution of marital property, and remand for the trial court to reweigh all of the factors that it finds appropriate in light of all of the holdings in this opinion, and then determine whether an unequal distribution would be equitable and the proper amount of any unequal distribution.

## VI.  Valuation of Real Estate

[8]  In his fourth and fifth arguments, plaintiff contends that the trial court erred in the valuation of certain undeveloped lots owned by the parties and in the valuation of the parties' primary residence. We agree.

There were four undeveloped lots owned by the parties; one lot on Fairway View Drive in Weaverville, and three lots in Gaston Mountain. As to the Fairway View Drive lot, the trial court found that the fair market value of the lot was $35,000, and that the fair market value of the lot at separation was also $35,000. Defendant paid part of the 2009 taxes, plaintiff paid the 2010 taxes, and the 2011 taxes were unpaid. Plaintiff paid the homeowner's fees in 2009 and 2010. There was no finding concerning any debt on the property. This property was distributed to defendant, with defendant to be responsible for the taxes and homeowner's fees.

As to the three Gaston Mountain lots, they were initially purchased by the parties together with Robert Carignan. Thus, the parties originally owned a one-half interest in each of the lots.

As to lot 33 of the Gaston Mountain lots, the trial court found that the parties' one-half interest had a fair market value of $44,500, both at the date of separation and the date of distribution. This value was apparently arrived at by dividing the listing price of the property in half. The trial court also found that lot 33 was pledged as collateral for a debt of Carignan in the amount of $45,552.25 as of the date of separation, but that the parties were not liable for that debt. This lot was distributed to plaintiff. Plaintiff was charged with paying any outstanding taxes and homeowner's association dues.

As to lot 27 of the Gaston Mountain lots, the trial court found that the parties had listed the lot for sale at a price of $35,000. The court found that this reflected their opinion of the value of the property. The trial court found that their one-half interest had a fair market value of $17,500 on the date of separation. However, following the separation of the parties, Carignan conveyed his one-half interest to the parties for no consideration. Lot 27 was pledged as collateral for a debt of Carignan in the amount of $45,852.25. The trial court found that the parties were not liable for that debt. This debt was also secured by a lien upon lot 28. Based upon the debt owed on the Carignan half-interest, the trial court found it to have no value. This lot was distributed to plaintiff. Plaintiff was charged with paying any outstanding taxes and homeowner's association dues.

As to lot 28 of the Gaston Mountain lots, the trial court found that the parties had listed the lot for sale at a price of $79,000.00. The trial

court found that this reflected their opinion of the value of the property, and found that their one-half interest had a fair market value of $39,500 on the date of separation. Following separation, Carignan conveyed his one-half interest to the parties for no consideration. Lot 28 was pledged as collateral for the debt of Carignan in the amount of $45,852.25. The trial court found that the parties were not liable for that debt. This is the same lien that secures lot 27. Based upon the debt on the Carignan half-interest, the trial court found it to have no value. This lot was distributed to plaintiff. Plaintiff was charged with paying any outstanding taxes and homeowner's association dues.

The trial court further found that the parties' one-half interests in the three Gaston Mountain lots were financed with a loan in the original amount of $89,500 secured by an equity line loan on the parties' residence.

On appeal, plaintiff contends that due to market conditions, none of these lots are currently saleable, and therefore have no value. This assertion is based upon the fact that the lots have been listed for sale for a number of years with no buyers. Plaintiff further contends that there is no competent evidence to support the trial court's valuation of the lots, based upon the listing price.

The trial court valued all four undeveloped lots based upon their respective listing prices. However, the uncontroverted evidence was that the Fairway View Drive lot had been listed for sale since 2006, and the three Gaston Mountain lots had been listed for sale since 2007. We hold that the listing price for real property is nothing more than the amount for which the parties would like to sell the property. It has no bearing upon the fair market value of the property, which is the amount that the trial court is required to determine for equitable distribution. "Fair market value has been defined as 'the price which a willing buyer would pay to purchase the asset on the open market from a willing seller, with neither party being under any compulsion to complete the transaction.' " *Becker v. Becker*, 127 N.C. App. 409, 414, 489 S.E.2d 909, 913 (1997) (quoting *Carlson v. Carlson*, 127 N.C. App. 87, 91, 487 S.E.2d 784, 786 (1997)). Our Supreme Court has further observed that:

> An owner may and frequently does place a higher price on his property than it will bring in the market. It is not until a voluntary buyer is willing to take the property at the stated price that the transaction becomes an indication of market value. A mere offer to buy or sell property is incompetent to prove its market value. The figure named is only the

opinion of one who is not bound by his statement and it is
[too] unreliable to be accepted as a correct test of value.

*N.C. State Highway Comm'n v. Helderman*, 285 N.C. 645, 654-55, 207
S.E.2d 720, 727 (1974) (citations omitted). Since the properties have
been for sale since 2006 and 2007, with no buyers, it is clear that the
listing price was not indicative of the fair market value of the property.
The portion of the equitable distribution judgment valuing the undevel-
oped lots is vacated, and this matter is remanded to the trial court for
further findings.

Upon remand, the trial court shall determine the fair market value
of each of the four lots as of the date of separation and as of the date of
distribution. The trial court shall take additional evidence upon which to
base its determination of fair market value.

## B.  Residence of the Parties

The trial court found that the parties' residence had a fair market
value as of the date of separation of $375,000. As of the date of separa-
tion, there were two mortgages on the property, securing debt in the
amount of $366,513.30. The debt was restructured following separation,
and as of the date of distribution the debt was $358,495.21. The trial
court found that the net fair market value of the property was $16,504.79.
The trial court then found that "the home at this point and in the cur-
rent market has no equity and therefore no income would be realized at
the point of sale." The trial court distributed this property to defendant
upon the condition that defendant have plaintiff's name removed from
the indebtedness within three months. It appears that the import of this
order was that defendant was to receive the property subject to both
mortgages. No credits were awarded to either party for post-separation
payment of debt.

Plaintiff contends that in valuing this asset, the trial court consid-
ered market conditions, whereas it did not do so in the valuation of the
undeveloped lots.

It appears that the trial court's analysis was that if the residence was
sold, the expenses of sale, primarily the real estate commission, would
consume any proceeds which might be realized at the sale. This analysis
was erroneous.

We have held that "the net value for marital property is ascertained
by calculating the fair market value of each asset, and subtracting the
value of any debt or encumbrance on the property." *Crowder v. Crowder,*

147 N.C. App. 677, 681, 556 S.E.2d 639, 642 (2001); *see also Cochran v. Cochran,* 198 N.C. App. 224, 227, 679 S.E.2d 469, 472 (2009); *Stone v. Stone,* 181 N.C. App. 688, 693, 640 S.E.2d 826, 829 (2007); *Fitzgerald v. Fitzgerald,* 161 N.C. App. 414, 418, 588 S.E.2d 517, 520 (2003). An abundance of case law supports the calculation of the net value of an asset as fair market value reduced by encumbrances. The trial court's consideration of expenses of sale went beyond what was permitted. The portion of the equitable distribution judgment valuing the marital residence is vacated, and this matter is remanded to the trial court for further findings.

Upon remand, the trial court shall determine the fair market value of the residence as of the date of separation and as of the date of distribution. The trial court shall then reduce this amount by the encumbrances on the property to determine its net value, but may not consider additional costs, such as the expenses of a hypothetical future sale.

### VII. Prejudice in Delay

**[9]** In his seventh argument, plaintiff contends that he was prejudiced by the delay from the conclusion of the trial court's hearings on 1 September 2011 to the issuance of the trial court's equitable distribution judgment on 5 March 2012. We disagree.

The equitable distribution proceeding began on 27 June 2011, and concluded on 1 September 2011. The trial court did not enter its equitable distribution order until 5 March 2012, about 6 months after the conclusion of the trial. Plaintiff contends that he was prejudiced by the delay due to the issues of valuation of the real property and his ongoing payment of marital debt, and that "he was prejudiced by the many errors he contends have been made but which could have been contributed to due to the 8 month delay."

The burden on appeal is upon plaintiff to show that he has been actually prejudiced by the court's delay in entering its order. *See Wright v. Wright,* ___ N.C. App. ___, ___, 730 S.E.2d 218, 222 (2012). Plaintiff has failed to identify any specific prejudice, aside from the delay that is inherent in any contested equitable distribution case, from the delay in entry of the order. Since we are remanding this matter for further findings, both parties will have the opportunity to address any changes that may have occurred since the original order, including those which occurred as a consequence not only of delay in entry of the order but also from the delay which is a necessary consequence of this appeal.

This argument is without merit.

## VIII.  Conclusion

As discussed above, we vacate portions of the equitable distribution order, and remand. We first note that, on remand, the trial court must receive additional evidence as to matters which must be considered as of the time that the distribution of marital property is to become effective. *See* N.C. Gen. Stat. § 50-20(b)(4) and (c)(1).

With regard to the corporation, the trial court is instructed to classify the corporation as marital or separate property, and if it is marital, to distribute the corporation (which has been valued at $0) and the $35,000 distribution from the corporation.

With regard to the equity line debt, the trial court is instructed to determine whether this was a marital debt, a separate debt, or partially marital and partially separate. The trial court shall also make findings as to the amount of the marital portion of the debt, if any, at the date of distribution, and shall distribute the increase or decrease as divisible property. Finally, it shall determine the amount of post-separation payments on the debt by the parties, and treat those payments as divisible property in accordance with the holding in *Warren*.

With regard to the credit card debt, the trial court is instructed to distribute this debt to one of the parties. With regard to the vehicles and bank accounts, the trial court is instructed to classify, value, and distribute each of these assets. With regard to distributional factors, the trial court is instructed to properly determine the income of the parties as of the date of distribution, reweigh all of the factors that it finds appropriate, and determine whether an unequal distribution is equitable, and if so, the amount of the unequal distribution.

With regard to the undeveloped lots, the trial court is to determine the fair market value of each of the four lots as of the date of separation and as of the date of distribution. The trial court shall take additional evidence upon which to base its determination of fair market value as of the date of separation. With regard to the marital residence, the trial court is instructed to determine the fair market value of the residence as of the date of separation and as of the date of distribution. The trial court shall then reduce this amount by the encumbrances on the property to determine its net value. Based upon its revised findings and conclusions, the trial court shall then determine the total net value of the marital estate and the percentages distributed to each party and clearly allocate each item of property or debt to the parties.

MANCUSO v. BURTON FARM DEV. CO. LLC

[229 N.C. App. 531 (2013)] .

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

Judges ELMORE and STROUD concur.