ELMORE, Judge.
 

 *21
 
 After five years of litigation involving six different attorneys and abounding motions, the trial court ordered an equitable distribution of the parties' marital and divisible property. Defendant appeals, challenging the distribution of former company property and marital debt, his ability to pay a distributive award, and the trial court's order for sanctions. We affirm.
 

 I. Background
 

 Denise Chafin (plaintiff) and Stephen Chafin (defendant) were married on 20 December 1988 and separated on 12 June 2008. During the marriage, defendant started a used car dealership, I Rush Auto Sales, LLC (Rush Auto), which sold mid-to low-end used cars purchased through a wholesaler known as Manheim. The Articles of Organization were filed 12 February 2007, naming defendant and his business partner, Peter Ault, as organizers. Their venture was short-lived. Mr. Ault was later removed as a member and replaced by defendant's father, Robert Chafin.
 

 *696
 
 The company continued to operate through the date of separation until it was administratively dissolved on 8 August 2008.
 

 On 14 May 2009, plaintiff filed a complaint seeking,
 
 inter alia
 
 , an equitable distribution of the marital and divisible property. Pursuant to a pretrial scheduling order, plaintiff served her initial equitable distribution inventory affidavit on 29 July 2010, followed by a second inventory affidavit attached and incorporated into her proposed pretrial order on 24 October 2011. In both affidavits, plaintiff listed the business interest in Rush Auto, valued at $10,000.00, and its associated bank accounts as marital property to be distributed to defendant. She filed an amended preliminary equitable distribution affidavit on 7 March 2012, this time including an itemized list of nine vehicles which plaintiff claimed were owned by Rush Auto on the date of separation.
 

 Upon additional discovery, plaintiff submitted her final inventory affidavit on 10 April 2013, listing the following in "Schedule C Business or Professional Interests":
 
*22 C1 I Rush Auto Sales, LLC ... [No Value] I Rush Auto Sales, LLC C1(a) Bank of America Checking Account ... $11,110.13 Account Number ending in -3001 I Rush Auto Sales, LLC C1(b) ... $50,825.00 Inventory (Vehicles) .... I Rush Auto Sales, LLC C1(d) ... $4,218.16 Cash on Hand I Rush Auto Sales, LLC C1(e) SunTrust Checking Account ... $1,782.56 Account Number ending in -8407 I Rush Auto Sales, LLC C1(f) SunTrust Checking Account ... TBD Account Number ending in -9050

 Plaintiff alleged that each item was marital property, in possession of defendant, and should be distributed to defendant.
 

 The trial court ordered defendant to serve his equitable distribution inventory affidavit and to fill in his contentions on the pretrial order, but he failed to do so. He did serve an "affidavit in response to the proposed pretrial order" on 30 May 2013, the day before the hearing on the pretrial order. As later described by the court, however, defendant's affidavit "utterly ignored the Guilford County Local Rules with regard to equitable distribution" and "[did] not comply with pretrial order form required by the Guilford County Local Rules."
 

 At the hearing, the parties agreed to entry of the pretrial order with the understanding that plaintiff would amend the inventory schedules to reflect defendant's contentions.
 

 *697
 
 In his affidavit, defendant objected to plaintiff's classification of the business interests on the following grounds:
 

 Schedule C: Business or Professional Interests
 

 C1 Husband valued I Rush Auto Sales, LLC at -0- dollars.
 

 C1(a) Although bank account for Rush Auto may indicate deposits totaling $11,110.13 the debt service would at least equal this amount.
 

 C1(b) The inventory of vehicles amount [sic] does not take into account the value less any loans against the vehicles, that is, $50,825.00 does not represent the equity in the vehicles.
 

 ....
 

 C1(d) The amount of "cash on hand" represents the amount of money for which, at the point calculated, debts of the business had not been paid or taken into account.
 

 *23
 
 C1(e) The amount of funds in the Rush Auto banking account 8407 of $1,782.56 was owned by Pete Ault and is not part of the funds of Husband.
 

 C2(f) The amount of funds in the Rush Auto banking account 9050 which is "TBD" is not known nor recognized by Husband.
 

 Defendant also agreed that "if anything new comes up at [plaintiff's] deposition," scheduled for June 2013, then "it will just be added onto whatever that file [sic] pretrial order may be."
 

 After several continuances, the trial was peremptorily set for 9 and 10 January 2014. On 13 January 2014, after the trial had begun, defendant filed a series of motions, including a motion to amend the pretrial order, a motion to preserve the record with excluded evidence and testimony, a motion to continue the trial, and three months later, a motion to set aside the pretrial order. The trial court denied defendant's motions, but did eventually allow his motion to preserve the record in which defendant offered evidence to show that not all vehicles listed in the pretrial order were on the Rush Auto lot on the date of separation.
 

 On 6 November 2014, the trial court entered its equitable distribution order, in which it made the following findings and conclusions relevant to defendant's appeal:
 

 8. With regard to the items on Schedule C, the Court finds and orders the following:
 

 a. Item Cl, I Rush Auto Sales, LLC, is a marital asset distributed to the Defendant, but due to insufficient evidence, the Court cannot make a determination as to value.
 

 b. Item CI(a), I Rush Auto Sales, LLC Bank of America Checking Account, account number ending in -3001, is a marital asset distributed to the Defendant at a value of $11,110.13. Defendant failed to provide sufficient proof that the funds in the account were encumbered.
 

 c. Item C1(b), I Rush Auto Sales, LLC Inventory (Vehicles), is a marital asset distributed to the Defendant at a value of $36,350.00. This amount reflects the price Defendant paid for the vehicles that were on the car lot on the date of separation. Plaintiff completed an inventory of the vehicles on the car lot on the date of separation. Defendant's Manheim registry, which is a list of the vehicles purchased
 
 *24
 
 via the Manheim Finance Company, dated on or about the date of separation, is consistent with the models described by Plaintiff. However, there was insufficient evidence that Defendant was able to sell the vehicles for a profit. In fact, Defendant's business was unprofitable and therefore closed down.
 

 ....
 

 e. Item CI(d), I Rush Auto Sales, LLC Cash on Hand, is a marital asset distributed to the Defendant at a value of $4,218.16.
 

 f. Item Cl(e), I Rush Auto Sales, LLC SunTrust Checking Account, account number ending in -8407, had a date of separation value of $1,782.56, but when the Defendant and his partner dissolved the business, Defendant left the funds in the account and Defendant's partner took possession of the funds.
 

 ....
 

 14. With regard to the items on Schedule H, the Court finds and orders the following:
 

 *698
 
 h. Item H8, HFC Judgment (formerly Household Realty), is a marital debt distributed to the Plaintiff at a value of ($19,419.92). This amount represented a civil judgment that appeared as a lien on the marital home and had to be paid at closing in order to sell the marital home. Although, this debt is associated with the mortgage and the Court would normally distribute it to the same party being distributed the marital home, the parties stipulated that it would be distributed to Plaintiff.
 

 ....
 

 23. In order to effectuate the equitable distribution of the marital estate ordered herein, the Defendant shall pay a distributive award to the Plaintiff in the amount of $89,385.44 at the rate of $550.00 per month beginning November 1, 2014 and continuing on the first of each month thereafter until the balance is paid in full. The above distributive award is related to the cessation of the marriage.
 

 24. The Court finds that Defendant is presently employed and has adequate assets and income from said employment
 
 *25
 
 such that Defendant has the ability to pay the distributive award as set forth herein.
 

 The trial court also allowed plaintiff's motion for sanctions pursuant to Rule 11 and
 
 N.C. Gen. Stat. § 50-21
 
 (e). The court ordered defendant to pay $10,000.00 in attorney's fees based on its conclusions that defendant and his counsel unreasonably delayed the proceedings through "defendant's numerous and frivolous motions, defendant's discovery 'tactics,' and most recently defendant's abuse of the pretrial order process." Defendant filed notice of appeal on 5 December 2014 from the judgment and order of equitable distribution and the order for sanctions.
 

 II. Discussion
 

 Our review is governed by the following principles of equitable distribution:
 

 Upon application of a party for an equitable distribution, the trial court "shall determine what is the marital property and shall provide for an equitable distribution of the marital property ... in accordance with the provisions of [
 
 N.C. Gen. Stat. § 50-20
 
 ]." In so doing, the court must conduct a three-step analysis. First, the court must identify and classify all property as marital or separate based upon the evidence presented regarding the nature of the asset. Second, the court must determine the net value of the marital property as of the date of the parties' separation, with net value being market value, if any, less the amount of any encumbrances. Third, the court must distribute the marital property in an equitable manner.
 

 Smith v. Smith
 
 ,
 
 111 N.C.App. 460
 
 , 470,
 
 433 S.E.2d 196
 
 , 202-03 (1993) (citations omitted) (quoting
 
 N.C. Gen. Stat. § 50-20
 
 ),
 
 rev'd in part on other grounds
 
 ,
 
 336 N.C. 575
 
 ,
 
 444 S.E.2d 420
 
 (1994).
 

 Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with the statute, will establish an abuse of discretion.
 

 Wiencek-Adams v. Adams
 
 ,
 
 331 N.C. 688
 
 , 691,
 
 417 S.E.2d 449
 
 , 451 (1992) (citations omitted).
 

 *26
 

 A. Distribution of Checking Account, Vehicles, and Cash on Hand
 

 Defendant first argues that the trial court lacked jurisdiction to distribute the Bank of America checking account, vehicles, and cash on hand, because Rush Auto held legal title to these assets and was not joined as a party to the action.
 

 Defendant raises this argument for the first time on appeal and without evidentiary support. At no point during this action did he object to plaintiff's classification of these items as marital property: In his responsive affidavit, he contests only the value of each of these items. In his motions to amend and to preserve the record, he challenges plaintiff's evidence as to which vehicles were on the Rush Auto lot on the date of separation. And in his motion to set aside the pretrial order, he actually concedes that any vehicle on the Rush Auto lot on the date of separation
 
 *699
 
 would be marital property. Defendant has therefore failed to preserve this argument for appellate review.
 
 See
 

 Quesinberry v. Quesinberry
 
 ,
 
 210 N.C.App. 578
 
 , 581-83,
 
 709 S.E.2d 367
 
 , 371-72 (2011) (rejecting husband's argument that the trial court lacked jurisdiction to distribute assets he claimed belonged to business where he made no prior objection and stipulated that assets were marital property);
 
 see also
 

 Weil v. Herring
 
 ,
 
 207 N.C. 6
 
 , 10,
 
 175 S.E. 836
 
 , 838 (1934) ("[T]he law does not permit parties to swap horses between courts in order to get a better mount...."); N.C. R. App. P. 10(a)(1) (2016) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion...."). And as discussed in Part B,
 
 infra
 
 , the evidence ultimately supports the trial court's findings that the business interest, checking account, vehicles, and cash on hand, are marital property.
 

 B. Business Interest in Rush Auto
 

 In the alternative, defendant argues that if the trial court had jurisdiction, it nevertheless erred in distributing Rush Auto to defendant without assigning a value to the business interest.
 

 "In an equitable distribution proceeding, the trial court is to determine the net fair market value of the property based on the evidence offered by the parties."
 
 Walter v. Walter
 
 ,
 
 149 N.C.App. 723
 
 , 733,
 
 561 S.E.2d 571
 
 , 577 (2002) (footnote and citations omitted);
 
 see also
 

 N.C. Gen. Stat. § 50-20
 
 (c) (2015) ("There shall be an equal division by using net value of marital property and net value of divisible property...."). "In valuing a marital interest in a business, the task of the trial court is to arrive at a date of separation value which 'reasonably approximates' the net value of the business interest."
 

 *27
 

 Offerman v. Offerman
 
 ,
 
 137 N.C.App. 289
 
 , 292,
 
 527 S.E.2d 684
 
 , 686 (2000) (quoting
 
 Poore v. Poore
 
 ,
 
 75 N.C.App. 414
 
 , 422,
 
 331 S.E.2d 266
 
 , 272 (1985) ).
 

 Rush Auto was organized during the marriage and still operating on the date of separation, making any business interest in the company marital property-as found by the trial court.
 
 See
 

 N.C. Gen. Stat. § 50-20
 
 (b)(1) (2015) ;
 
 see also
 
 N.C. Gen. Stat. § 57D-5-01 (2015) ("An ownership interest is personal property.");
 
 Hill v. Hill
 
 ,
 
 229 N.C.App. 511
 
 , 518,
 
 748 S.E.2d 352
 
 , 358 (2013) ("If the corporation was created during the marriage, and it was owned and operated by the parties, it is a marital asset regardless of the stock ownership." (citation omitted)). Specific assets of an LLC, on the other hand, are owned by the entity and are not the property of the interest owners.
 
 See
 
 N.C. Gen. Stat. § 57D-2-01(a) (2015) ("An LLC is an entity distinct from its interest owners");
 
 see also
 
 N.C. Gen. Stat. §§ 57D-4-01, -5-05, -6-04(c)(1), -6-08 (2015). Although Rush Auto was dissolved after the date of separation, defendant correctly notes that dissolution alone does not transfer title to the company's assets. N.C. Gen. Stat. § 57D-6-07(e) (2015).
 

 By virtue of the business interest, however, defendant was entitled to a distribution of the remaining assets after dissolution and during the winding up of the company's affairs.
 
 See
 
 N.C. Gen. Stat. § 57D-4-03 (2015) (describing manner of "[d]istributions to interest owners before the dissolution and winding up of the LLC or, as provided in G.S. 57D-6-08(2), after the dissolution of the LLC"); N.C. Gen. Stat. § 57D-6-08 ("During the winding up of an LLC, the LLC's assets are to be applied ... [f]irst to creditors, ... [t]he balance to interest owners as distributions....");
 
 see also
 

 Hill
 
 ,
 
 229 N.C.App. at 518-19
 
 ,
 
 748 S.E.2d at 358
 
 (holding that to the extent corporation was marital asset, post-separation distributions were marital property). This much is reflected in the trial court's equitable distribution order: In particular, the court found that the Bank of America checking account, vehicles, and cash on hand, were marital property; Rush Auto was unprofitable and therefore closed down; after dissolving the company, defendant's business partner took possession of the funds in the SunTrust account; and defendant failed to prove that the Bank of America checking account was encumbered.
 

 While the trial court distributed Rush Auto without explicitly valuing the company, the findings ultimately reflect a reasonable estimate
 
 *700
 
 of the parties' interest. In plaintiff's initial inventory affidavits, she assigned a $10,000.00 valuation to the business based primarily on its inventory. As additional assets were revealed through discovery, she listed them separately under the Rush Auto business interest, valuing each item individually and leaving blank the value of the company. The record
 
 *28
 
 shows no other former company property at stake, leading further to the conclusion that any interest in the dissolved company is represented by the aggregate value of the checking account, inventory, cash on hand, accounts payable, and accounts receivable-all of which were distributed to defendant.
 
 See
 

 Poore
 
 ,
 
 75 N.C.App. at 419
 
 ,
 
 331 S.E.2d at 270
 
 (instructing courts to consider the following components in valuation of a business: "(a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities"). If there was an error in the distribution of Rush Auto, therefore, it was the trial court's decision to itemize the assets separately from the interest in the company.
 
 See
 
 1 Brett R. Turner,
 
 Equitable Distribution of Property
 
 § 5:16, at 311 (3d ed. 2005) ("[T]he value of the corporate assets is included in the value of the corporation's stock, and any stock owned by the parties would of course be marital property."). Accordingly, we see no reason to remand and extend this action any longer.
 

 C. Classification and Value of Vehicles
 

 Next, defendant challenges the trial court's finding that the vehicles are marital property worth $36,350.00. Specifically, defendant contends that there is no competent evidence that the nine vehicles listed in plaintiff's affidavit were "presently owned" on the date of separation.
 

 "In appellate review of a bench equitable distribution trial, the findings of fact regarding value are conclusive if there is evidence to support them."
 
 Crutchfield v. Crutchfield
 
 ,
 
 132 N.C.App. 193
 
 , 197,
 
 511 S.E.2d 31
 
 , 34 (1999) (citing
 
 Chandler v. Chandler
 
 ,
 
 108 N.C.App. 66
 
 , 73,
 
 422 S.E.2d 587
 
 , 592 (1992) ). " 'This Court is not here to second-guess values of marital and separate property where there is evidence to support the trial court's figures.' "
 

 Id.
 

 (quoting
 
 Mishler v. Mishler
 
 ,
 
 90 N.C.App. 72
 
 , 74,
 
 367 S.E.2d 385
 
 , 386 (1988) ).
 

 In plaintiff's amended preliminary equitable distribution affidavit, she listed the make, model, year, and value for each of the nine vehicles claimed to be marital property. Plaintiff testified during a deposition that she visited the Rush Auto lot with defendant on the date of separation and took note of which vehicles had not been sold. Upon comparison with Rush Auto's vehicle registry, the vehicles listed by plaintiff are consistent with those purchased by the company from Manheim before the date of separation.
 

 Plaintiff also testified that she valued each of the vehicles by consulting the National Automobile Dealers Association. She arrived at a total date of separation value of $52,825.00, as shown in the inventory
 
 *29
 
 affidavit submitted with her proposed pretrial order and the schedules attached to the pretrial order. In the trial court's equitable distribution order, however, it valued the vehicles at $36,350.00 to reflect the price paid by Rush Auto for the vehicles, evidenced by checks written to Manheim, because "there was insufficient evidence that Defendant was able to sell the vehicles for a profit." Based on the foregoing, the trial court's classification and valuation of the vehicles are supported by competent evidence.
 

 Relatedly, defendant argues that the court improperly denied him the opportunity to offer evidence of which vehicles were on the Rush Auto lot on the date of separation. In defendant's response to the pretrial order, he raised only one objection to the vehicles: "The inventory of vehicles amount [sic] does not take into account the value less any loans against the vehicles, that is, $50,825.00 does not represent the equity in the vehicles." Because defendant had an opportunity to contest the accuracy of the inventory but failed to do so until after the trial had begun, the court did not abuse its discretion in denying defendant's request to offer evidence. In any event, the record shows the trial court allowed defendant's motion to preserve the record with excluded evidence and testimony,
 
 *701
 
 and that it ultimately considered the evidence in its order for equitable distribution.
 

 D. Ability to Pay Distributive Award
 

 Next, defendant argues that the trial court abused its discretion by ordering a distributive award without considering defendant's ability to pay. In its equitable distribution order, the trial court specifically found "that Defendant is presently employed and has adequate assets and income from said employment such that Defendant has the ability to pay the distributive award as set forth herein." Because this finding is also supported by competent evidence showing that defendant has sufficient liquid assets to pay the award, we reject defendant's argument.
 
 See
 

 Allen v. Allen
 
 ,
 
 168 N.C.App. 368
 
 , 376-77,
 
 607 S.E.2d 331
 
 , 336-37 (2005).
 

 E. Stipulation as to HFC Judgment
 

 Next, defendant argues that there is no evidence to support the trial court's Finding of Fact No. 14(h), in which the court found that the parties stipulated to the distribution of the HFC Judgment to plaintiff.
 

 Along with plaintiff's contentions for an unequal division, the HFC Judgment appears in plaintiff's final equitable distribution inventory affidavit and the schedules to the pretrial order. In defendant's response to the proposed pretrial order, he appears to contest plaintiff's
 
 *30
 
 accusation that the $19,000.00 debt was attributable to necessary repairs to the marital home after defendant allowed the home to deteriorate. But apart from shifting blame for the debt or vaguely objecting to its value, defendant did not contest that the HFC Judgment was a marital debt that should be distributed to plaintiff. In light of this evidence and defendant's "abuse of the pretrial order process," we cannot accept defendant's argument that the stipulation resulted in an admission of a fact which clearly was intended to be controverted.
 
 See
 

 Rickert v. Rickert
 
 ,
 
 282 N.C. 373
 
 , 380,
 
 193 S.E.2d 79
 
 , 83 (1972) (citations omitted). The evidence supports the trial court's finding that the parties stipulated to the distribution of the marital debt to plaintiff.
 

 F. Rule 11 Sanctions
 

 Finally, defendant challenges the trial court's order for Rule 11 sanctions. In cursory fashion, defendant contends that "not every finding of fact and law can be addressed in this brief but all are contested and denied." Because he offers no reason or argument to support his broad contentions, they are deemed abandoned. N.C. R. App. P. 28(b)(6) (2016). In defendant's only developed argument, he defends his decision to file motions to amend and to set aside the pretrial order, which were a fraction of the grounds supporting the trial court's nine-page order for sanctions. Defendant nevertheless maintains that these motions were filed in good faith and "to prevent manifest injustice."
 

 We review
 
 de novo
 
 the trial court's decision to impose mandatory sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11(a) (2015).
 

 In the
 
 de novo
 
 review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a).
 

 Turner v. Duke Univ.
 
 ,
 
 325 N.C. 152
 
 , 165,
 
 381 S.E.2d 706
 
 , 714 (1989).
 

 There is sufficient evidence in the record to support the trial court's finding that defendant filed the challenged motions in an attempt to delay the hearing of this equitable distribution matter. Contrary to defendant's assertion, he had more than ample opportunity to refute
 
 *31
 
 plaintiff's evidence concerning the inventory of the vehicles. He failed to do so during the pretrial order process, at the pretrial order hearing, or within a reasonable time after plaintiff's deposition. Instead, defendant elected to file his motions after the equitable distribution hearing had begun and
 
 *702
 
 without prior notice to plaintiff. Because the sufficiency of the evidence supports the findings, the findings the conclusions, and the conclusions the judgment, the trial court properly ordered Rule 11 sanctions against defendant.
 

 III. Conclusion
 

 Based on the foregoing, we affirm the trial court's judgment and order of equitable distribution and its order for sanctions.
 

 AFFIRMED.
 

 Judges DAVIS and DIETZ concur.