NO. COA13-1230

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

CARLTON CLARK, JR.,
      Plaintiff,

      v.                                Hoke County
                                        No.  09-CvD-1062
SUSAN BELMAIN DYER,
      Defendant.


Appeal by plaintiff from Equitable Distribution Judgment entered 7 February 2013 by Judge John H. Horne, Jr. in District Court, Hoke County.  Heard in the Court of Appeals 6 March 2014.

*Ferrier Law, P.L.L.C., by Kimberly M. Ferrier, for plaintiff-appellant.*

*No appellee brief filed.*


STROUD, Judge.


Plaintiff appeals equitable distribution judgment.  For the following reasons, we remand in part and affirm in part.

## I.   Background

In this appeal from the trial court's equitable distribution judgment, plaintiff's arguments can be summarized as a claim that the trial court gave defendant the gold mine,

while he got the shaft.[1]  We disagree and affirm, but for the reasons explained below, we remand for additional findings of fact and conclusions of law as to two issues and correction of an typographical error and miscalculations.

"The parties met in the early spring of 2004" at Chrome's Bar and Grill in Fayetteville, where "plaintiff was a patron and customer" and defendant was working as a bartender. The parties began dating, and defendant became pregnant with the parties' first child in May of 2004.  The parties had two children together, born in 2005 and 2006.  After the birth of their second child, in 2006, the parties married; they separated on 23 June 2009, and divorced on 14 March 2011.

Plaintiff owned and operated a sole proprietorship known as "Air Tech" prior to, during, and after the marriage, and the parties either separately or together during the marriage owned substantial bank accounts, personal property, and several

---

[1] As stated by Jerry Reed, who wrote, *She Got the Goldmine (I Got the Shaft)*, a country song which addresses some of the legal aspects of divorce:  "'Goodbye, turkey. My attorney will be in touch.'  So I decided right then and there I was gonna do what's right[.] Give 'er her fair share but, brother, I didn't know her share was gonna be that much.  She got the goldmine . . . I got the shaft. . . . They split it right down the middle, And then they give her the better half."  Jerry Reed, She Got the Goldmine (I Got the Shaft), on The Man with the Golden Thumb (RCA Records 1982).

parcels of real property. On 18 December 2009, plaintiff filed a complaint which included claims for divorce from bed and board, a paternity test, child custody, and equitable distribution. Thereafter, defendant filed an amended answer and counterclaimed for divorce from bed and board, post-separation support, permanent alimony, child custody and child support, and equitable distribution.

On 17 November 2010, the trial court entered a Consent Order awarding child support to defendant, interim equitable distribution, and dismissing defendant's counterclaims for post-separation support and alimony. On 7 February 2013, the trial court entered the equitable distribution judgment ("ED Judgment") which plaintiff appealed.[2] The ED Judgment is approximately 30 pages long and contains over 90 findings of fact; thus, for brevity, efficiency, and clarity we discuss below only those findings of fact necessary for an understanding

---

[2] The ED Judgment found as fact that the parties were "divorced on March 14, 2011" and that both children are children of "the parties[.]" As we have already noted, the consent order dismissed defendant's counterclaims for post-separation support and alimony. The interim equitable distribution order also found as fact that "[a]ll issues relating to alimony, child custody, child support, and attorney's fees incurred by the defendant in connection with the issues relating to child custody, visitation, and support have been previously resolved by prior orders of this court." Thus, equitable distribution is the only claim at issue between the parties on appeal.

of the arguments before this Court.

## II. Standard of Review

> The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary.
> The trial court's findings need only be supported by substantial evidence to be binding on appeal. We have defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
> As to the actual distribution ordered by the trial court, when reviewing an equitable distribution order, the standard of review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason.
> The trial court's unchallenged findings of fact are presumed to be supported by competent evidence.

*Peltzer v. Peltzer*, ___ N.C. App. ___, ___, 732 S.E.2d 357, 359-

60 (citations, quotation marks, and brackets omitted), *disc.*

*rev. denied*, 366 N.C. 417, 735 S.E.2d 186 (2012).

### III. Observations Concerning This Appeal

This case does not, as did *Hill v. Hill*, "embody *all* of the flaws that could possibly create an abominable appeal of an equitable distribution judgment," but it does embody many of them, and adds on a few more for good measure. ___ N.C. App. ___, ___, 748 S.E.2d 352, 355 (2013) (emphasis added). As in *Hill*, "[t]he defendant filed no brief." *Id.* at ___, 748 S.E.2d at 355. "The order of the trial court combines evidentiary findings of fact, ultimate findings of fact, and conclusions of law" although here there was some "attempt to make them separate portions of the order." *Id.* at ___, 748 S.E.2d at 356. "The brief of appellant is replete with inaccurate references to the record and transcript." *Id.* Mostly, here the brief refers only to the testimony in the transcript which is most useful and convenient to support plaintiff's argument, but fails to specifically reference the detailed exhibits presented at trial by both parties; without a brief from defendant, we have done our best to find the relevant documents. "In many instances there are no references to where the factual assertions are to be found in the record or transcript, in violation of Rule 28(e) of the Rules of Appellate Procedure." *Id.* at ___, 748 S.E.2d at

356.

Throughout plaintiff's brief, he has commingled his arguments and issues, much as he seems to have commingled his separate, marital, and business funds during the marriage, thus rendering it difficult for us to discern exactly what his argument is as to many of the trial court's findings and conclusions. Plaintiff seems to realize this, as he prefaces his arguments by stating that he "recognizes a mere broad brush approach and a single assignment of error to the 7 February 2013 Equitable Distribution Judgment . . . is not appropriate, but with humble respect, Plaintiff does take issue with the entire Judgment and all of the Findings of Fact, Conclusions of Law and the Order." Plaintiff then proceeds to present ten relatively specific issues focusing on particular items of property or debt with a final issue entitled "ADDITIONAL ASSIGNMENTS OF ERROR" in which plaintiff expresses general displeasure with various pretrial rulings of the trial court, several discovery issues which were not preserved for appeal, and the fact that the trial court found much of defendant's evidence more credible than his own. Yet we must address plaintiff's arguments in some logical manner, within the applicable legal standards of review, so we have reorganized his issues into three categories and will try

to address his arguments, which are raised in scattershot fashion, as they relate to each of the trial court's three required tasks in equitable distribution: classification, valuation, and distribution.

And in addition to these flaws, the plaintiff's contempt and disdain for defendant is expressed throughout his brief. Of course, it is clearly expressed throughout the record of this contentious case as well. In fact, defendant filed a Rule 11 motion addressing the disparaging statements about her in several motions which were filed for the purpose of "harass[ing] and injur[ing]" her, and, in addition, have no relevance whatsoever to the equitable distribution case. Plaintiff seems fixated on the circumstances of the inception of his and defendant's relationship back at Chrome's Bar and Grill, but that has no relevance to this case or this appeal. We will not address plaintiff's many general grievances against defendant which litter the record and brief, except to say that an appellate brief is no place for such nonsense.

## IV. Classification

Plaintiff argues that the trial court improperly classified several items of property and debts. One of plaintiff's arguments as to classification arises repeatedly throughout his

brief, so we will address it first as we can easily dispense with it. Plaintiff places great emphasis upon defendant's pretrial stipulation which he characterizes as a stipulation that "she made no financial contributions of any kind to the Plaintiff or to his separate properties prior to or during the marriage." As plaintiff raises this argument more than once, we will address this stipulation and its relevance in more detail.

Defendant did stipulate to the following:

> 1. Other than her bank account records, the defendant has not maintained any record of direct financial contributions to the household expenses, bills, and debts incurred by the parties during the course of their marriage.
>
> 2. During the course of the marriage of the parties, the defendant did not make any direct financial contribution to the payment of any of the plaintiff's separate debts which he had incurred prior to the marriage of the parties.
>
> 3. During the course of the marriage of the parties, the defendant did not make any direct financial contribution toward the payment of the mortgage on the residence in which the parties resided during their marriage.
>
> 4. During the course of the marriage of the parties, the defendant did not make any direct financial contribution toward any items purchased by the plaintiff for his use in his business known as "Air Tech".

Plaintiff argues that since defendant did not put any funds

into the bank accounts used during the marriage she did not make any contribution to the acquisition of or the reduction of the debt on various items of property. Plaintiff fails to appreciate that although defendant did not make any "direct financial contributions" to various property from her own income or her own separate funds during the marriage, plaintiff's income, including his earnings from Air Tech, during the marriage, *is* marital property, and *his* "direct financial contributions" from his income during the marriage are marital contributions. *See* N.C. Gen. Stat. § 50-20(b)(1) (2009). Thus, to the extent that plaintiff claims that there was no *marital* contribution to the acquisition of or reduction of debt on various items of property during the marriage, his argument is based upon a misapprehension of the law. Plaintiff's contributions were marital contributions. *See id.* We will now address plaintiff's arguments as to classification of the various items.

A. Lakeview Drive Property

Plaintiff first contends that "the trial court improperly classified and improperly valued the 355 Lakeview Drive Property." (Original in all caps.) "Plaintiff takes issue with" at least 25 findings of fact, but for most of them fails

to make any argument as to what exactly his "issue" is; thus, we will address only those "issue[s] for which plaintiff makes an argument.

Rather than quoting numerous pages of the judgment, we will summarize the trial court's findings about the Lakeview Drive Property. Defendant's parents owned Greenbrier Estates, Inc., which owned a large tract of land that was subdivided into lots. The subdivision was owned by defendant's parents or their corporation for at least 30 to 35 years, and defendant's parents, sister, and brother-in-law all lived on the same lake. For years prior to the marriage, defendant and her parents had an understanding that one of the lakeside lots would be hers. Ultimately, on 10 January 2005, prior to the marriage, defendant's parents conveyed two lots to plaintiff and defendant, as tenants in common. The parties then discussed placing a modular home on the lots and after extensive searching and consideration, they jointly chose a model home from Siler City and decided to place it upon the Lakeview Drive Property lots. Plaintiff never conveyed any intent that the modular home placed upon the Lakeview lots would be *his* home but always referred to it as *our* home, at least until after the separation. Defendant would never have agreed to place the modular home on

the Lakeview Drive Property lots if she had known that plaintiff may later claim that the modular home was his sole and separate property. Plaintiff provided funds to purchase the modular home and to have it erected on the Lakeview Drive Property lots, except for $5,000.00 which defendant contributed towards the purchase of the home. Plaintiff took out a construction loan and a conventional loan to pay for the modular home. During the marriage, defendant did not pay the mortgage on the Lakeview Drive Property and did not make direct financial contributions to its acquisition except for the $5,000.00. Up to this point in the findings of fact, defendant has made no specific challenge to the findings, and thus these facts are binding on appeal. *Allred v. Exceptional Landscapes, Inc.*, ___ N.C. App. ___, ___, 743 S.E.2d 48, 51 (2013) ("Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal.")

Defendant does specifically challenge finding of fact number 38, which is:

> The plaintiff has contended that the residence constitutes his separate property, under the source of funds rule, contending that the money for the residence came from the sale of certain property that he had owned on Water Street in Fayetteville, North Carolina. However, as to the lots upon which the home was constructed, they were clearly

a gift to both parties by the defendant's parents prior to the marriage, and the parties incurred no debt in connection with the acquisition of the lots, nor did they pay any consideration for the lots. The deed for the two lots is dated January 10, 2005, and was recorded on January 11, 2005, in Book 652, at Page 376, Hoke County Registry, and the recorded deed indicates that no revenue stamps were purchased in connection with the recording of the deed, confirming that no consideration was paid.

Plaintiff's entire argument as to finding of fact 38 is: "In Finding 38 the trial court identifies the 'source of funds' rule, that Plaintiff expended his own separate funds, but then seems to indicate that the 'sources of funds' rule fails." However, this is a flawed argument because the trial court did not "indicate that the 'sources of funds' rule fails[,]" as plaintiff argues, but rather did not find plaintiff's evidence regarding the source of the funds to be credible, as is made clear in other findings of fact. As such, plaintiff does not argue that finding of fact 38 is not supported by the evidence, but rather he challenges the trial court's conclusion of law regarding the classification of the Lakeview Drive Property.

Plaintiff's argument regarding finding of fact 39 is similar to his argument regarding finding of fact 38. Finding of fact 39 is that

[t]hereafter, the parties secured a loan for

the construction of the home on the lots, in the amount of \$119,900.00, and the deed of trust securing the said loan was recorded on March 4, 2005, in the Office of the Hoke County Register of Deeds, in Book 659, Page 367.

Plaintiff argues only that the evidence does not support a finding that the *parties* secured a loan, as the loan was only in *plaintiff's* name, but again, plaintiff's actual argument is a challenge to the trial court's conclusion of law as to the classification of the Lakeview Drive Property.

In summary, the trial court concluded:  The real property, the two lots, owned by the parties as tenants in common and acquired prior to marriage, are not marital; they are the separate jointly owned property of both parties.  Plaintiff made a gift of a one-half interest in the structures on the property, including the home, to defendant.  Plaintiff does not truly challenge any of the findings of fact upon which the conclusions regarding the Lakeview Drive Property are based, but argues mostly regarding the credibility of the evidence.  The unchallenged findings of fact support the trial court's classification of the Lakeview Drive Property.

Plaintiff does make a legal argument as well regarding the Lakeview Drive Property, based upon *McIver v. McIver*, 92 N.C. App. 116, 374 S.E.2d 144 (1988).  Plaintiff argues that the

trial court in *McIver* improperly "used a premarital relationship and the fact that they were living together prior to marriage as a basis to classify property as marital." *McIver* bears a superficial factual resemblance to this case, at least to the extent that the husband purchased a lakefront lot and home in which the parties both lived in prior to their marriage, paid for by funds from the sale of property the husband had owned before the marriage, and a home the parties continued to live in after their marriage, until their separation. *McIver*, 92 N.C. App. at 117, 117-18, 374 S.E.2d at 146.

In *McIver*, the trial court found that the husband had purchased, in his own name, the lakefront lot and mobile home in contemplation of marriage, the parties lived there, and the wife, both before and after the marriage, provided services of upkeep and improvements of the property. *Id.* at 122-23, 374 S.E.2d at 148. Based upon these facts, the trial court classified the lakefront lot and home as entirely marital. *Id.* at 123, 374 S.E.2d at 148-49. This Court reversed:

> It appears from the record, as the husband maintains, that the trial judge improperly relied upon the parties' premarital relationship--in particular, the fact that they lived together--in classifying certain property as marital. In doing so, the judge operated under a misapprehension of the law.

Only married persons are afforded the protections of our equitable distribution statute. That statute is unambiguous: property must be acquired during marriage to be classified as marital property, and only marital property is subject to distribution. We decline to expand the Legislature's clear definition of marital property to include property acquired prior to marriage.

The record shows that the wife's premarital contributions to what later became the marital home consisted of services in the form of housekeeping, upkeep of the property, and helping to construct a seawall. Though we do not decide whether a spouse may have other remedies for services provided before marriage, the potential availability of equitable remedies--such as constructive trust, resulting trust, recovery in *quantum meruit* or quasi-contract--does not transform property acquired before marriage into marital property subject to equitable distribution under Section 50-20.

Accordingly, we conclude that it was error for the trial judge to classify as marital any interest in property acquired before the parties were married but while they lived together.

*Id.* at 125-26, 374 S.E.2d at 150 (citations omitted).

But what the trial court did in *McIver* is not what the trial court did here. *Compare id.* In this case, it is clear, and plaintiff does not seem to dispute, that the *land* itself is separate property, as it was acquired prior to the marriage by gift, in which each party had an equal, separate interest. There was no indebtedness on the land, and thus no potential

marital contribution by payment of a loan on the land, and the trial court classified the land itself as separate. But the modular home was affixed to the land prior to the marriage, but acquired, by payment of the loans, both prior to and during the marriage, so any separate interests are mixed with a marital interest; thus, the dispute is as to the classification of the home, which was purchased and affixed to the land prior to the marriage. The trial court did not find that defendant's services of pre-marital housekeeping gave her a marital interest in the home, as did the trial court in *McIver*. *Id.* at 125-26, 374 S.E.2d at 148-49. Here, the trial court concluded, "based upon the totality of the circumstances[,]" that "plaintiff intended a gift to the defendant of a ½ interest in the home." These circumstances included, but were not limited to, the fact that they placed the home on jointly owned land which had been given to them by defendant's parents and that they selected the home together and treated and referred to the home as *ours* both prior to and during the marriage. The trial court made many detailed findings about circumstances of acquiring and erecting the home which we will not quote here, and they are not effectively challenged by plaintiff. Thus, the legal issue presented is not a "source of funds" issue; the issue is whether

the findings support the trial court's conclusion that plaintiff made a *pre-marital* gift of a one-half interest in the home to defendant.

Plaintiff's brief fails to make any argument regarding the issue of the pre-marital gift of the home, and defendant did not file a brief with this Court. Since plaintiff has not presented any argument that the trial court erred in its conclusion that he made a gift of a one-half interest in the home to defendant, he has waived this argument, and we will not construct this argument for either party. *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358 (2005) ("It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein.") Plaintiff's challenge to the classification of the Lakeview Drive Property is therefore overruled.

B.    Duffie Road Property

Plaintiff next contends that "the trial court erred by failing to include the Duffie Road Property in the marital estate" or to distribute it. (Original in all caps.) The trial court made the following finding regarding the Duffie Road Property:

> 43.  In October of 2006, shortly before the marriage of the parties, the plaintiff

purchased two lots on Duffy [sic] Road in Hoke County, North Carolina, where he operated a shop in connection with his refrigeration installation and repair business. The deed for this property was recorded on October 31, 2006, in the Office of the Register of Deeds of Hoke County, in Book 736, Page 1041, Hoke County Registry. The deed indicates that excise tax in the amount of $94.00 was paid in order to record the deed, indicating that the plaintiff had paid $47,000.00 for this property. Title to this property was placed in the plaintiff and the defendant, as joint tenants with right of survivorship, pursuant to North Carolina General Statute 41-2.

The trial court's findings of fact regarding the Duffie Road Property are intermingled with findings of fact regarding the Lakeview Drive Property, and at times it is not entirely clear as to which property the trial court is referring in the findings of fact. It would appear that the trial court may have simply considered the Duffie Road Property as separate property of the parties, in which each party has a one-half interest, and if so, the trial court's failure to distribute this property would be proper, since the trial court cannot distribute separate property. Most of plaintiff's arguments seek to compare the Duffie Road property to the Lakeview Drive Property, although it is not clear to us why. But it is true that the trial court does not explicitly mention in its conclusions of law or decree the classification, valuation, or disposition of

the Duffie Road Property. Because we are unable to discern which of the trial court's findings of fact apply to the Duffie Road Property and how the trial court actually classified this property, we are unable to review the ED Judgment, and we remand to the trial court for additional findings of fact and conclusions of law regarding the Duffie Road Property.

C. Plaintiff's Business

Plaintiff next contends that "the trial court erred by including the plaintiff's separate business property in the marital estate." (Original in all caps.) Plaintiff argues that he "owned his businesses twenty seven years prior to marrying the defendant. The Plaintiff conducted businesses through his [three] bank accounts . . . . Plaintiff also owned equipment, buildings and vehicles as a part of these businesses prior to the marriage." There were also accounts receivable involved which the trial court considered based primarily on plaintiff's own deposition testimony and personal financial statement which "plaintiff prepared or had prepared[,]" and only he, his sister, and his accountant had access to it. Ultimately, the trial court classified and valued plaintiff's businesses not as whole business entities but by classifying, valuing, and distributing their components: the three bank accounts, the items of

equipment such as forklifts and trailers, and the accounts receivable.

Because the judgment addresses the business properties as components, most of which are comprised of the bank accounts, plaintiff's arguments here address mainly the bank accounts and centers on the "source of funds" rule and commingling:

> "Comingling of separate property with marital property, occurring during marriage and before date of separation, does not necessarily transmute separate property into marital property; transmutation would occur, however, if the party claiming the property to be his separate property is unable to trace the initial deposit into is [sic] form at the date of separation." *Fountain v. Fountain*, 148 N.C. App. 329, 333, 559 S.E.2d 25, 30 (2002).

Plaintiff's arguments are nearly impossible to follow, but as best we can tell, they can be summarized this way: he owned his businesses prior to marriage; the bank accounts had certain balances on the date of marriage; the defendant did not personally deposit any money into the bank accounts during the marriage; and thus at least the amounts in the accounts as of the date of marriage should be his separate property. There are two problems with plaintiff's arguments. One is factual and the other legal.

The factual issue is that plaintiff argues before this Court that he himself testified at trial that "his sister cashed his paychecks each week and put the cash in his drawer. . . . His income from his business was not deposited back into his business." The trial court did not find plaintiff's claim as to how he handled his funds to be credible.[3] Instead, the trial court found that "plaintiff did not maintain separate bank accounts for his personal expenditures and business expenditures, but comingled his personal and business funds, as well as his personal and business expenditures." The trial court further found that there were numerous transactions including deposits and withdrawals in all of the accounts during the marriage. The trial court also found that

> [f]unds were transferred among the aforesaid bank accounts, whenever one account needed funds, and there were surplus funds in another account. The court finds from the testimony of Sieglenda Melvin, the plaintiff's sister, in her deposition of January 17, 2011, that the bank accounts constituted one 'big bucket' and that the funds were all the plaintiff's funds.

---

[3] For example, the trial court also found, and this finding is not substantively challenged on appeal, that "[t]hough the plaintiff testified he had income in the year 2009 of only $12,028.00, he introduced evidence that for the same year, he had personal expenditures in excess of $106,000.00."

After many findings of fact regarding the bank accounts, the trial court ultimately found as to the bank accounts:

> 68. The plaintiff has not traced the funds in the account at the time of the marriage into their form at the date of separation. North Carolina General Statute 50-20(b)(1) creates the presumption that all property in existence at the time of the separation is marital property, and as to the bank accounts, the plaintiff has failed to rebut that presumption. Therefore, the court classifies the funds in the bank accounts on the date of the separation as marital property.

As we noted above, plaintiff fails to appreciate that defendant need not personally contribute financially to the bank accounts during the marriage to create a marital interest. Plaintiff's own earnings and efforts during the marriage created the marital interest, *see* N.C. Gen. Stat. § 50-20(b)(1), and he failed to present sufficient evidence to trace his separate contributions. Indeed, plaintiff has failed even in his brief on appeal to articulate how the trial court could possibly trace his pre-marital funds based upon the evidence presented, and the findings of fact which the trial court made are fully supported by the evidence. We conclude that the trial court did not err in classifying "the funds in the bank accounts on the date of separation as marital property." This argument is overruled.

D. Plaintiff's Rental Property

Plaintiff contends that "the trial court erred by including the separately owned rental property of the plaintiff in the marital estate." (Original in all caps.) The plaintiff directs us to three findings of fact regarding three different properties. However, the trial court did *not* include plaintiff's "separately owned rental property" in the marital estate. The trial court actually found that two of the rental properties were plaintiff's separate property and one was defendant's separate property and that during the marriage payments were made to reduce the debt on all the properties by marital contribution. The trial court determined that the "[r]eduction in debt[,]" paid with marital funds, was marital property, not the properties themselves, and the trial court included only this "[r]eduction in debt" value as a marital asset. Accordingly, this argument is overruled.

E.   Credit for Debts

Plaintiff contends that "the trial court erred by failing to give plaintiff credit for his debt[,]" (original in all caps.) including credit cards, a line of credit, and defendant's attorney's fees that he was ordered to pay.

1.   Credit Card and Line of Credit Debts

"Plaintiff takes issue with Finding 77[,]" which is as follows:

77. The plaintiff has claimed that he had the following debts at the time of the separation of the parties:

Credit card debt $ 1,469.64
American Express credit card $ 89.95
American Express credit card $ 388.43
Credit line $ 9,311.00

However, since the plaintiff used credit cards both in connection with his business, as well as for personal expenses, the court finds that the plaintiff has not met his burden of proof of showing that the said debts are marital debts, and will not consider the said debts in the distribution of the marital property.

Plaintiff first argues that he cannot figure out where the numbers listed for these debts came from, which is presumably an argument that these findings of fact are not supported by the evidence. Yet the trial court also found, and plaintiff does not challenge that "plaintiff has not met his burden of proof of showing that the said debts are marital debts, and will not consider the said debts in the distribution of marital property."

"In a non-jury trial, where there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because

of other erroneous findings which do not affect the conclusions." *In re Estate of Mullins*, 182 N.C. App. 667, 670-71, 643 S.E.2d 599, 601 (citation omitted), *disc. rev. denied*, 361 N.C. 693, 652 S.E.2d 262 (2007). Here, even if the trial court's findings as to the amounts of the debts were erroneous, it did not affect the distribution of property, and thus we need not address this issue. *See id*. This argument is overruled.

2. Attorney's Fee Debt

Plaintiff also argues that the trial court should have included in the distribution the $22,637.29 "debt" of attorney's fees which were awarded to defendant by the trial court in a prior ORDER ON ATTORNEY FEES regarding "child support, post-separation support and alimony[;]" we cannot fathom why plaintiff would argue that an award of attorney's fees incurred by defendant on these claims, which obviously did not exist during the marriage or on the date of separation, could possibly be a marital debt or included in an equitable distribution award.

> A marital debt is one incurred during the marriage and before the date of separation by either spouse or both spouses for the joint benefit of the parties. The party who claims that any debt is marital bears the burden of proof on that issue. The party so claiming must prove the value of the debt on the date of separation and that it was

> incurred during the marriage for the joint benefit of the husband and wife.

*Becker v. Becker*, 127 N.C. App. 409, 414-15, 489 S.E.2d 909, 913 (1997) (citations, quotation marks, and ellipses omitted).  This argument is entirely frivolous and overruled.

## V.  Valuation

Plaintiff argues that the trial court failed to properly value several items of property.

### A.  Lakeview Drive Property

As discussed above, the Lakeview Drive Property has marital and separate components, which the trial court valued in the ED Judgment.  We will start by seeking to determine what the trial court actually did, since plaintiff's brief does not articulate this. We will express the trial court's findings in table form:

| Item of Property: | Value: | Finding of Fact No.: |
|---|---|---|
| Value of entire Lakeview Drive Property | $200,000.00 | 50 |
| Lot values (separate property owned 50/50 by each party) | $37,000.00 | 50 |
| Value of structures including residence and a separate garage | $163,000.00 | 51 |
| Mortgage balance on the residence on the date of separation | $108,132.25 | 52 |
| Equity value in structures | $54,867.75 | 52 |
| Premarital expenditures by plaintiff (plaintiff's separate | $102,397.00 | 40 |

| interest) | (65% using the correct number)[4] | |
|---|---|---|
| Marital expenditures on residence | $55,128.64<br><br>(35% using correct number)[5] | 47 |
| Value of gift of ½ interest in structures from plaintiff to defendant | $17,832.02[6] | 56 |

Because the trial court found that plaintiff made a gift to defendant of a one-half interest in the home and garage, the trial court found that "there is an additional jointly owned separate component in the property of $36,267.58, of which each party would own ½, or $18,133.79."[7] We agree that the trial court's math was wrong due to the typographical error of listing

---

[4] The order finds $107,397.07 as plaintiff's pre-marital expenditures on the residence and garage in finding of fact 53, which plaintiff claims, and we agree, is a typographical error, and we have included the correct number from finding of fact 40. The trial court found that 66.1% of the cost of the residence was incurred by plaintiff prior to marriage, but this should be 65% using the correct numbers.

[5] The trial court found 33.9%, for the same reasons as stated in footnote 4.

[6] The trial court finds the amount to be $18,133.79 based on the typographical error mentioned in footnote 4. Using the correct number of $102,397.00 yields the correct amount here, $17,832.02.

[7] Again, using the correct number of $102,397.07 for plaintiff's pre-marital contribution on the home and garage, this should be a "separate component in the property of $35,664.04, of which each party would own ½, or" $17,832.02.

$107,397.07 as plaintiff's pre-marital contribution on the home and garage instead of $102,397.07, which then makes the trial court's calculation of the percentages wrong. Yet we do understand how the trial court valued the property, the values are supported by the evidence, and we do not find any abuse of discretion in how the trial court allocated the percentages of values.

Plaintiff's real objection is to the classification of the property, based upon the trial court's finding that plaintiff made a gift to defendant of a one-half interest in the structures on the land, but we have already rejected that argument. We therefore remand for the trial court to correct the typographical error and resulting miscalculations, but otherwise overrule this argument.

B. Business Value

Plaintiff also contends that "defendant failed to get an appropriate business valuation." (Original in all caps.) Plaintiff's argument mainly faults *defendant* for failing to request a valuation of plaintiff's businesses, specifically AirTech, which he argues he owned twenty years prior to the marriage; Rental Ice Machine; and the rental properties. This argument is quite odd, as one would expect that if defendant

were to present evidence of business valuation, she would present a *higher* value than plaintiff. We do not think that plaintiff is arguing that the valuation of his business assets and accounts was too low; clearly, he thinks it was too high. However, plaintiff himself admits "[t]he CPA that testified *on behalf of the Plaintiff* . . . offered the only insight into the value of Plaintiff's separate businesses[.]" (Emphasis added.) Thus, plaintiff is conceding that the trial court relied solely upon evidence presented by *plaintiff* as to the value all of these properties. To the extent that the trial court lacked evidence on these valuations, plaintiff, as the owner and operator of these businesses, would be primarily at fault, as he had all of the information regarding his "separate business property[.]" It appears that because the trial court accepted some of his evidence, but rejected other parts, plaintiff seeks to impugn the trial court for using the evidence he himself presented, arguing that "*knowing the favor Defendant's counsel garnered with the trial judge*, he chose to use pieces of the Plaintiff's separate business property to arrive at [an] increased marital award for an approximate two and [a] half year marriage." (Emphasis added.)

Plaintiff's additional arguments on this issue address the

credibility and weight of the evidence, not its sufficiency to support the findings of fact. Plaintiff challenges at least 14 findings of fact as being "against the manifest weight" of the evidence and then proceeds to argue, picking and choosing various findings at random, what his evidence showed and why the trial court should have relied upon it. Plaintiff does not argue that the trial court did not have evidence upon which to make its findings of fact, but rather that it was not his evidence or that the trial court picked which portions to rely upon instead of accepting all of it.

Contrary to plaintiff's arguments, the manifest weight of the evidence is not the correct standard of review; we review the trial court's findings of fact to determine if they are supported by competent evidence. *Peltzer*, ___ N.C. App. at ___, 732 S.E.2d at 359. Furthermore, "[t]he trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary." *Id.* at ___, 732 S.E.2d at 359. Also, "it is within a trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial." *Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994). We will not reweigh the evidence

presented to the trial court, so this argument is overruled.

## VI.    Distribution

Plaintiff also raises several arguments as to the actual distribution of the marital property.

A.    Calculation of the Credit for Post-Separation Payments by Plaintiff on the Mortgage on the Lakeview Drive Property

Plaintiff argues that "the trial court erred by failing to honor the stipulation of the parties and/or correctly calculate the stipulation of the parties[.]"  (Original in all caps.) Plaintiff bases this argument upon the provisions of the Consent Order of 17 November 2010, in which the parties resolved the issues of child support, defendant's claims for post-separation support and alimony were dismissed, and interim equitable distribution was made.  The relevant provisions of the Consent Order state that:

> 4.    The plaintiff shall pay the monthly mortgage payment on the residence formerly occupied by the parties as husband and wife, for nine months, but in any event, no longer than until August 17, 2011, and in addition, he shall pay the ad valorem taxes and insurance on the said residence at 355 Lakeview Drive, Red Springs, North Carolina.
>
> . . . .
>
> 16. The defendant shall pay the pro rata mortgage payment for the month of August, 2011, by paying 13 days thereof, in the event all issues of equitable

distribution are not resolved by August, 2011.

17. The plaintiff shall continue to pay the mortgage, taxes, and insurance on the residence formerly occupied by the parties, until August 17, 2011, but his payments thereon shall be considered as interim equitable distribution, for which he shall be entitled to a credit at the time of the entry of any equitable distribution judgment.

18. In the event the equitable distribution action is tried and judgment is entered prior to August 17, 2011, the interim equitable distribution payments as provided for herein shall cease and terminate, but in no event shall the interim equitable distribution payments required of the plaintiff herein be extended beyond August 17, 2011.

Plaintiff contends that the trial court's finding of fact in the ED Judgment awarding him credit for making mortgage payments was in error because it "short[ed]" him the payments made from the date of separation in June 2009 until December 2010 and that the trial court used the wrong amount for the monthly payments, claiming that he testified that in October 2010 the payment was $1,021.17. Plaintiff also testified that the payment in November of 2011 was $1,018.97 and $1,000.03 in December of 2011. However, plaintiff's argument ignores his own very detailed exhibit number 45, which lists the "Post separation BB & T Costs Paid for by" plaintiff which includes

the mortgage payments for each month up until September of 2011. The payments vary over time, but for the months of September 2010 until August 2011 the payments were $987.45, the amount as found by the trial court. This was the amount of each and every payment during the relevant time period, which was from the date of entry of the Consent Order, November of 2010, until August of 2011, the ending date which was very specifically set forth in the November 2010 Consent Order. This adds up to 8 months, beginning in December of 2010 and ending in August 2011, at $987.45 per month, with the prorated payment for August 2011 of $541.62, and a total of $8,441.22, precisely the amount found by the trial court.

Plaintiff argues that the trial court "erred by choosing not to recognize or misinterpreting the agreement of the parties in the 17 November 2010 Consent of the parties" and claims that this nearly $20,000 error is an "unbalanced award [which] gives the appearance [of] further bias against Plaintiff and suggests an unbalanced abuse of discretion." Plaintiff is entirely incorrect. The trial court applied the Consent Order exactly as it was written. The parties seem to have anticipated that their equitable distribution case would be heard by 17 August 2011 and chose to tailor their Consent Order on this assumption, even to

the extent of providing for a pro-rata payment for August. Plaintiff then filed a motion for peremptory setting to hear the case on 15 August 2011. Unfortunately, the case was not heard in August 2011, and it was peremptorily set for 19 September 2011, but this peremptory setting was continued on plaintiff's request. A series of motions and countermotions regarding interim equitable distribution ensued, addressing the disputes which arose because the ending date of the Consent Order provisions had passed with no final resolution of equitable distribution, ending in another interim equitable distribution order or about 18 November 2011, in which plaintiff was ordered to pay an interim equitable distribution payment of $10,000.00 to defendant. The trial finally began on 14 November 2011, "but could not be completed during that session of court[,]" and resumed at the 19 March 2012 session of the trial court, which was the next session at which the trial judge "was assigned to hold civil court in Hoke County."

The Consent Order encompassed many issues which are not subjects of this appeal. The parties reached a detailed agreement regarding the mortgage payments for their own reasons which are not revealed by our record, and neither we nor the trial court can add to or subtract from that agreement. The

trial court gave exactly the credit dictated by the Consent Order. This argument is overruled.

B. Failure to Make Findings of Fact and Conclusions of Law Regarding the Presumption of an In-Kind Distribution

Plaintiff contends that "the trial court failed to make any findings of fact and conclusions of law relating to the presumption of an in kind distribution." (Original in all caps.) The trial court ordered the following distribution to defendant:

> a. By transfer to [defendant] of [plaintiff's] ½ undivided interest in the value of the lots upon which the residence and garage are situated, with a value of $18,500.
>
> b. By transfer to [defendant] of [plaintiff's] additional separate interest in the residence of $18,133.79 [or corrected amount $17,832.02].
>
> c. The balance of the distributive award in the amount of $8,192.81 shall be paid by the plaintiff to the defendant within nine months of the date of the entry of this order, or upon the refinance of the residence by the plaintiff as required under paragraph 7, supra, so as to secure the release of the plaintiff from the deed of trust on the said residence.

Plaintiff argues that the trial court did not make any findings of fact or conclusions of law to support making a distributive award not in-kind. While most of the distribution

was in-kind, with the exception of $8,192.81 which was needed to balance out the distribution, it is true that the trial court did not specifically address why it ordered this payment.

In *Allen v. Allen*, our Court addressed this situation:

> N.C. Gen. Stat. § 50-20(e) (2003) creates a presumption that an in-kind distribution of marital or divisible property is equitable, but permits a distributive award to facilitate, effectuate, or supplement the distribution. The judgment of equitable distribution must contain a finding of fact, supported by evidence in the record, that the presumption in favor of an in-kind distribution has been rebutted. In the instant case, the trial court did not make findings pertaining to the presumption that an in-kind division of the property was equitable. Yet, the record contains evidence that defendant's business was a closely held corporation and not susceptible of division. Such evidence would support a finding that the in-kind presumption was rebutted. We remand for the entry of further findings of fact regarding the basis for the court's distributive award.

168 N.C. App. 368, 372-73, 607 S.E.2d 331, 334 (2005) (citations and quotation marks omitted). Here, instead of a closely held corporation, plaintiff has a sole proprietorship, but the same logic applies. We remand for the trial court to make an additional finding of fact as to how the presumption in favor of an in-kind award was rebutted and a conclusion of law supporting

its distributive award.[8]

Plaintiff also argues that "the trial court failed to point to a source of liquid assets from which Plaintiff could pay the distributive award as required by *Embler v. Embler*, 159 N.C. App. 186, 582 S.E.2d 628 (2003)." We disagree. In *Embler*, the husband argued he was ordered to pay a distributive award without a finding that he had liquid assets. *Id.* at 187, 582 S.E.2d at 629. Here, several bank accounts, valued in excess of $60,000.00 in total, were distributed to plaintiff; these are liquid assets which could logically serve as a source of payment. In addition, the trial court gave plaintiff nine months to make the payment. Accordingly, this argument is overruled.

VII. Awarding Lakeview Drive Property to Defendant

Plaintiff also makes a separate argument in his brief that defendant should not have been awarded the Lakeview Drive Property because she does not have the financial ability to maintain it. But plaintiff cites no law nor are we aware of any requiring the trial court to consider as a distributional factor what may happen to property in the future or a party's ability

---

[8] We note that the trial court could have simply allocated $8,192.81 from one of the bank accounts to defendant, thus accomplishing an in-kind distribution in full and eliminating plaintiff's next argument regarding a source for the payment.

to maintain a property.  Accordingly, plaintiff's arguments as to the Lakeview Drive Property are overruled.

## VIII.  Conclusion

For the foregoing reasons, we remand for additional findings of fact and conclusions of law regarding the Duffie Road Property, for correction of the typographical error and resulting miscalculations regarding the Lakeview Drive Property, and for an additional finding of fact as to how the presumption in favor of an in-kind award was rebutted and a conclusion of law supporting its distributive award; as to all other issues, we affirm.

REMANDED in part and AFFIRMED in part.

Judges CALABRIA and DAVIS concur.