An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-279

Filed 17 December 2025

Alexander County, No. 24CVD000211-010

ASHTON RAE KERLEY, Plaintiff,

v.

CAMERON DREW KERLEY, Defendant.

Appeal by defendant from order entered 14 June 2024 by Judge Christine Underwood in Alexander County District Court. Heard in the Court of Appeals 29 October 2025.

*Ralston Benton Byerley & Moore, PLLC, by Matthew L. Benton, for defendant.*

*Clodfelter Law, PLLC, by Christina Clodfelter, for plaintiff.*

ARROWOOD, Judge.

Cameron Drew Kerley ("defendant") appeals from order entered in favor of Ashton Rae Kerley ("plaintiff") following a bench trial before the Honorable Christine Underwood on plaintiff's Complaint, Motion for Domestic Violence Protection Order, and Motion for Temporary Custody. The trial court concluded that defendant committed domestic violence against plaintiff and that there was a danger of serious

and immediate injury, upon a finding that defendant placed the plaintiff "in fear of continued harassment that rises to such a level as to inflict substantial emotional distress." Defendant alleges on appeal that the court's finding and conclusions were erroneous. For the following reasons, we affirm.

## I.     Background

Plaintiff and defendant married on 5 September 2015 and separated on 5 May 2024. The parties have two young children together. Plaintiff filed her Complaint and Motion for Domestic Violence Protective Order on 6 May 2024.

Plaintiff's complaint alleged an increasingly severe pattern of sexual abuse, threats, intimidation, financial and emotional neglect, and verbal and emotional abuse. She began seeing a counselor in August 2022 to discuss her emotional distress related to her marriage. She produced individual records of her therapist's notes for 18 of their sessions, tending to corroborate the pattern alleged in her complaint. In the sessions, she discussed defendant's alcohol abuse, "being hounded to have sexual relations with spouse until [she] gives in," and "feeling controlled and anxious continuously." Plaintiff regularly discussed her lack of sexual desire for defendant, due to "many years of hurt and distrust" and defendant's cycles of "healthy change and [quick reversion] to destructive and non-caring behaviors," including his constant sexual advances followed by arguments. Plaintiff testified that she had been diagnosed with anxiety, for which she was prescribed both daily and as-needed medications, and which manifested in physical effects such as an elevated heart rate.

Plaintiff also produced a series of emails with her biblical counselor Stevie Robertson from October 2023, discussing in particular a "terrible incident" from August 2022, after which she regretted not calling police for her safety, due to defendant's inebriation and threats, including that "he would ruin [her] life and take the kids . . . all because she rejected sex [while] he was drunk." Ms. Robertson testified at trial that plaintiff had reported "he would follow her around . . . bullying her" and "would turn the lights on in the night and they would have arguments and it would be loud until she gave in to intercourse." She testified that she and plaintiff "came up with a plan to help her get out of the marriage she was in, where she felt unsafe. And she did not heed that advice, at that time." She also testified that plaintiff "wouldn't speak to me at church or in public because she was fearful of her husband seeing," and plaintiff's emails noted that "I know if I go to counseling it will cause a huge fight."

Plaintiff herself also testified at length about defendant's pattern of behavior, in which her "pursued [her] for sexual contact that [she] had said no to," and which "had gone on for years." She testified about repeated incidents in which, at bedtime, defendant "tries to initiate and then it turns into an argument . . . and if I continue to stand up for myself and say no, the argument continues until I give in . . . There have been times that I've seen the sun come up. There have been times that it's been 5:00 in the morning that I give in." She told the court that she had discussed in counseling her feelings of being like "a bunny that's in a clump of grass that can't get

away from something that's trying to eat it."

Plaintiff testified about the August 2022 incident at trial, which began with defendant's attempt to initiate sex and "went on through the night." She testified that defendant followed her throughout the house, threatening her with legal action, "that he would ruin my reputation, would take the kids," and told her "he could stand wherever he wanted to in his own house, [even] if that was in my face." She testified that defendant, a former law enforcement officer "told [her] if [she] called law enforcement, that he was friends with all of them and that they would take [her] to jail."

Plaintiff testified about an incident in April 2023, in which he repeatedly pursued her for sex and "[put] his hands on [her] in private areas," which she repeatedly verbally declined until she was "hysterically crying." She testified about another incident from the summer of 2023, during which defendant "put his hands on [her] while she was in bed with her children" and said no "two or three times" and left the room because she "knew saying no was going to be an uproar there with the kids." Defendant then followed her to the next room, where she "just had sex to get it over with . . . because to say no ends up being an argument that escalates that goes on and on until I do give in . . . It's exhaustive emotionally that way to go through arguing and saying no when it doesn't matter. And I'm still going to have to do it anyway."

Plaintiff also testified about the day of the separation, 5 May 2024. She

testified that, after leaving church, defendant became upset over a misunderstanding and became verbally aggressive towards plaintiff while in the car with their children, including making unfounded accusations of adultery. Plaintiff decided that she was going to file for divorce and anticipated an argument at home which she did not want the children present for, so she insisted he drive them to his mother's home. As the argument escalated at home, plaintiff sensed that his body language was becoming progressively concerning, and she called law enforcement without defendant's knowledge using a phone feature she had researched, and local police remained present until she left the home.

Plaintiff also submitted records of a domestic violence assessment and questionnaire, completed by Donyetta Gilmer, who handles domestic violence assessments for DSS and support group referrals, and who testified at trial. In Ms. Gilmer's written conclusions, dated 23 May 2024, she reported that plaintiff "disclosed a very extensive pattern of domestic and sexual violence" in which defendant "abused her mentally, emotionally, verbally, and sexually" and "[made] her afraid to seek help and support by manipulating her." Plaintiff's extensive written answers to the questionnaire tended to corroborate plaintiff's allegations. Ms. Gilmer testified that plaintiff's safety was her "number one" concern, and also recommended her to attend "domestic violence and rape and sexual assault groups" as well as "empowerment because she seemed like she had been beaten down for a while . . . her self esteem was really low."

In the order dated 14 June 2024, the trial court found that defendant "is insensitive to [plaintiff's] trauma surrounding sexual activity . . . [and] often badgers [her] over the span of hours to have intercourse with her." She found that plaintiff had "[described] the physical manifestation of her substantial emotional distress," and that she "takes medication for anxiety . . . [and] has engaged in therapy." She found also that on 5 May 2024, defendant "became verbally abusive" and plaintiff "became so concerned for her safety" that she called police "using a feature on her phone to surreptitiously call 911." The court found that during the incident, defendant "placed [plaintiff] in fear of continued harassment that rises to the level of substantial emotional distress]," and made the conclusions that he "has committed acts of domestic violence against the plaintiff" and that "there is danger of serious and immediate injury." Defendant gave notice of appeal as to the Order on 8 July 2024.

## II. Discussion

On appeal, defendant argues that the court erred in finding that on 5 May 2024, he "placed [plaintiff] in fear of continued harassment that rises to the level of substantial emotional distress," and in concluding that he "has committed acts of domestic violence against the plaintiff" and that "there is danger of serious and immediate injury."

In reviewing a domestic violence protection order, our analysis is limited to determining whether competent evidence supported this finding of fact, and whether

the court's conclusions were proper in light of the facts. *Martin v. Martin*, 266 N.C. App. 296, 302 (2019) (quoting *Burress v. Burress*, 195 N.C. App. 447, 449 (2009)). "Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal." *Burress*, 195 N.C. App. at 449–50 (citing *Harris v. Harris,* 51 N.C. App. 103, 105 (1981)). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *Forehand v. Forehand*, 238 N.C. App. 270, 273 (2014) (citation omitted). "In a non-jury trial, where there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions." *Clark v. Dyer*, 236 N.C. App. 9, 24 (2014), *cert. denied*, 368 N.C. 424 (2015).

Our General Statutes define "domestic violence" as

> the commission of one or more of the following acts upon an aggrieved party . . . with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
>
> . . .
>
> (2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress[.]

N.C.G.S. § 50B-1(a) (2023). Harassment is defined as "knowing conduct . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves

no legitimate purpose." N.C.G.S. § 14-277.3A(b)(2). Because they are undefined in the statute, we look at the ordinary meaning of the terms "torments, terrorizes, or terrifies." *State v. Watson*, 169 N.C. App. 331, 337 (2005) (stating that, "in construing a statute, undefined words should be given their plain meaning," and defining "torment" as "[t]o annoy, pester, or harass" and "terrorize" as "to fill with terror; terrify.")

A.     Competent Evidence Supported the Court's Finding of Fact as to Plaintiff's Fear of Continued Harassment

The record presents abundant evidence supporting this factual finding. Plaintiff presented the court with testimony and evidentiary exhibits which, taken together, tended to show that defendant subjected her to a sustained pattern of verbal and sexual mistreatment, in which arguments have repeatedly escalated to the point where defendant made distressing threats and allegations against her.

Importantly, plaintiff testified she understood defendant's behavioral triggers and body language, describing defendant as follows: "[L]eaning forward, intense staring at me, intimidating looks. The look in his eyes, I have seen before, specifically on other . . . occasions when he's accused me of cheating, this has happened. And in those situations, it has proceeded to get worse." She testified that, on 5 May 2024, during the incidents that led her to surreptitiously call the police and separate from defendant indefinitely, she observed, "I could see the tension and just his body language. . . . This look in his eyes, it's very intense. . . . Historically this has

happened before." She testified that, even before the couple arrived home on that date, she was so certain that the argument would escalate, that she needed to ensure that her children were out of the house.

Given the couple's long history together, plaintiff's testimony, and the multiple strands of evidence discussing in detail the physical and emotional effects of defendant's behavior, the court could reasonably determine that defendant's longstanding cycles of conduct were knowing and capable of tormenting, terrorizing, or terrifying plaintiff, thereby causing substantial emotional distress. The trial court saw enough evidence of this kind to reasonably find that, on this date and in light of all the factual circumstances, plaintiff was in such fear of similar "continued harassment" due to defendant's conduct that she required police assistance. Therefore, competent evidence supported the trial court's determination that defendant's behavior was encompassed by the above statutes and definitions.

Accordingly, the trial court's finding that defendant "placed [plaintiff] in fear of continued harassment that rises to the level of substantial emotional distress" was supported by adequate competent evidence, and therefore it was reasonable and not erroneous.

B.    The Trial Court's Conclusions are Supported by its Findings of Fact

To enter a Domestic Violence Order of Protection, the court must make the legal conclusion that an act of domestic violence occurred. N.C.G.S. § 50B-3 (a). The court need not cite the evidence in detail but must specifically find the ultimate facts

essential to support the conclusions of law. *Kennedy v. Morgan*, 221 N.C. App. 219, 224 (2012) (citations omitted). In other words, because a single act of domestic violence is sufficient, the trial court's issuance of a DVPO will be upheld if the findings illustrate at least one act of domestic violence. *Keenan v. Keenan*, 285 N.C. App. 133, 136 (2022).

Here, the court's factual findings were limited but nevertheless sufficient to conclude that at least one event of domestic violence occurred. As discussed in the above section, the evidence was sufficient for the court to make the factual finding that defendant placed plaintiff "in fear of continued harassment that rises to such a level as to inflict substantial emotional distress." Such a finding of fact is alone sufficient to establish the legal conclusion that an act of domestic violence occurred, as the language corresponds precisely with the statutory definition. N.C.G.S. § 50B-1(a). Accordingly, we will not disturb this conclusion of law. Therefore, this Order was proper and we affirm the trial court's decision to issue it.

As to the court's second conclusion of law, defendant argues that "no evidence [suggested] that he would perpetrate a serious and immediate injury to the Plaintiff" and that there was "no evidence of threats of violence or injury." Defendant argues that the only conclusion supported by the findings of fact are that he "sought to keep his marriage intact and have marital relations with his wife." Although plaintiff made no allegations of a pattern of physical violence, defendant mischaracterizes both the evidence presented at trial and the court's findings. The court's factual findings

directly addressed defendant's sustained cycle of emotional mistreatment and sexual abuse which manifested physically and psychologically for plaintiff. The checked box on the Order of Protection expresses the court's legal conclusion that the harm done to plaintiff has heretofore been serious in nature, and that plaintiff remains at immediate risk of further harm should defendant interfere with her in any way. Therefore, the findings were adequate to support the court's legal conclusions.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's order.

AFFIRMED.

Judges GORE and GRIFFIN concur.

Report per Rule 30(e).